JUDGES: Hon. Carol Ann Robb, Hon. Cheryl L. Waite, Hon. Mary DeGenaro
OPINION
ROBB, P.J.
{¶ 1} Plaintiff-Appellant Albert Matasy appeals the decision of the Mahoning County Common Pleas Court granting *747 summary judgment in favor of his former employer, Defendant-Appellee Youngstown Ohio Hospital Company, LLC. Appellant contends the employer discriminated against him by failing to reasonably accommodate his disability when it denied his request to extend his previously-extended leave of absence and terminated his employment. For the following reasons, the trial court's judgment is affirmed.
STATEMENT OF THE CASE
{¶ 2} Appellant was employed at Northside Medical Center from 1974 until his termination on January 16, 2013. He filed a complaint against the employer in 2015, alleging disability discrimination under state and federal law. (He was 57 years old at the time of his discharge and also alleged age discrimination, but he abandoned this claim.) He alleged he was terminated due to a disability, he was denied a requested reasonable accommodation (an extension of his leave of absence), and the employer failed to engage in the interactive process by making a good faith effort to assist him in seeking reasonable accommodation for his disability.
{¶ 3} Appellant's complaint asserted he was disabled due to surgical replacement of his right hip and both knees. He said the hospital was aware of his disability and had a record of his condition, pointing to a series of surgeries beginning in 2009. An affidavit of the employer's human resources employee incorporated a summary of Appellant's history of leaves and light duty since November 2009. (Stone Aff.). His right knee was replaced in March 2010. (Matasy Depo. 13). His right hip was replaced in January 2011. (Matasy Depo. 20, 39).
{¶ 4} On October 5, 2012, Appellant stopped working due to his need for left knee replacement surgery, which was performed on November 7, 2012. He initially asked for a leave of absence until November 7, 2012. The employer granted the request, extending the end date to November 30, 2012, which exhausted Appellant's Family Medical Leave Act ("FMLA") balance (due to prior leaves that year). A collective bargaining agreement with Appellant's union stated: "you may apply for an unpaid General Medical Leave of Absence" if FMLA and paid time off is exhausted; in order to request this leave, medical certification must be provided; medical certification forms are available in human resources and must be turned in before the leave begins; the maximum leave is six months (including prior FMLA or paid time off); and "the company cannot guarantee reinstatement to any position following a General Medical Leave."[1]
{¶ 5} Appellant filed a leave of absence form requesting an extension of his leave of absence based on his physician's note seeking extended leave until December 31, 2012. Appellant requested "General Medical Leave (Non-FMLA)." The request for an extension of leave until December 31, 2012 was granted by the employer.
{¶ 6} Appellant then sought another extension of his leave of absence. He provided a note from his physician dated December 27, 2012, stating he may return to work on February 11, 2013 with no restrictions. Appellant's affidavit states he provided the physician's note to the employer "on or about" December 27, 2012. However, Appellant signed the leave of absence request form on January 3, 2013. (His physician signed paperwork for long term disability insurance through Sun Life Assurance *748 Company on January 4, 2013.)[2] Appellant's January 3, 2013 request for extension of leave was denied on January 16, 2013, and Appellant was terminated in a letter.
{¶ 7} On March 13, 2013, Appellant signed an affidavit attesting his "disability substantially impairs his ability to perform the major life functions of walking, bending, kneeling, and working." He also claimed the hospital's termination letter falsely said it was necessary to terminate him in order to maintain staffing levels. The human resources employee testified the employer did not hire a new patient care associate ("pca") to replace Appellant. (Stone Depo. 55). She did not know how his position was staffed. (Stone Depo. 53). Appellant explained he worked on the heart floor with patients after open heart surgery, covering approximately 20 patients, and there was only one pca on duty at a time. (Matasy Depo. 29-20, 43).
{¶ 8} The human resources employee explained a pca transports patients and assists in patient care, helping patients bathe and get in and out of bed. (Stone Depo. 13-14). During her deposition, the job description for a pca (Exhibit E) was introduced. The job description shows the position involves patient care duties, housekeeping within surgery, and activities involving supply and inventory. The work demands included: lifting 36 to 50 pounds occasionally, 18-25 pounds frequently, and 6-10 pounds constantly; occasional climbing, crawling, reaching, and operation of a foot pedal; and frequent crouching, kneeling, and twisting. Appellant testified he was on his feet the majority of the time at work. (Matasy Depo. 43, 57-58). He said he transported patients, answered call lights, helped patients get in and out of bed (for instance from a wheelchair or chair into the bed or from the bed to the toilet), took vital signs, and ran errands such as retrieving supplies from the supply and pharmacy departments. (Matasy Depo. 31-33). He was given light duty work for a time after his March 2010 right knee replacement and after his January 2011 right hip replacement. (Matasy Depo. 39).
{¶ 9} The employer filed a motion for summary judgment contesting the third element required for a prima facie case of disability discrimination by claiming Appellant could not safely and substantially perform the essential functions of the job by his own admissions. The employer noted Appellant's history of FMLA leaves and its history of permitting non-FMLA leaves and extensions, including the extension granted after the last knee surgery. The employer noted Appellant was unable to return to work on the date of termination and was still unable to perform the job at the time of the January 2016 deposition, where he testified his hip and knees would preclude him from performing the job. (Matasy Depo. 64-65).
{¶ 10} At deposition, Appellant further explained he could not kneel due to his knee surgery, was unable to lift heavy objects because of his hip, and could not walk even short distances due to his hip. (Matasy Depo. 11-13, 19). A few weeks prior to deposition, Appellant filed an application for Social Security Disability due to his hip, knees, and feet. (Matasy Depo. 10). He had a bunion surgery and joint fusion on his little toe in February 2015 and surgery on his great toe in June 2014 (which was still presenting as a bone non-union). (Matasy Depo. 14-16).
*749 {¶ 11} Appellant filed a memorandum in opposition to summary judgment. He noted the employer's motion did not dispute he was disabled or he suffered an adverse employment action due in part to his disability. He said the employer failed to engage in the interactive process, citing to his deposition testimony where he said he never spoke to anyone at the hospital between the time of his knee surgery and the time of his termination. (Matasy Depo. 56-57). Appellant argued the employer should have reasonably accommodated him with an extended leave rather than terminating him, noting the collective bargaining agreement permitted General Medical Leave after FMLA expired. Appellant stated that at the time of his termination, the hospital had no reason to believe he would not be able to return to work on February 11, 2013. He claimed there was evidence he could have performed his duties if he had been given the extended leave. He pointed out his physical condition when he applied for Social Security Disability, nearly three years after the termination, was not dispositive.
{¶ 12} Appellant attached his answers to interrogatories. He also attached a selection of discovery documents he produced in response to the employer's request for production of documents. For instance, there was an ADA questionnaire he signed on March 26, 2013, wherein he answered that he was able to perform his job duties with or without an accommodation and said the accommodation he requested was for additional leave. In addition, he attached his handwritten notes on his job search (utilized for unemployment compensation). He believed the job search and the statement that he volunteered at a hospital beginning in October 2013 was evidence he could have performed his job duties. He noted he returned to his regular duties after his prior surgeries (sometimes after a light duty assignment).
{¶ 13} The employer filed a reply arguing Appellant produced no evidence he could have returned to work with the requested accommodation, i.e., there was no evidence he could have performed his job on February 11, 2013. It was pointed out the December 27, 2012 physician's note was merely a projection and was not proper summary judgment evidence. The employer claimed the issue of whether Appellant could have returned to work on February 11, 2013 required expert testimony. The employer emphasized Appellant admitted he could not return on January 16, 2013 and said, in a March 13, 2013 affidavit, his disability "substantially impairs" his ability to kneel, walk, bend, and work . It was concluded the information relied on by Appellant in the medical note was at odds with his March 2013 affidavit. The employer acknowledged a leave of absence can be a reasonable accommodation but noted the employer need not wait indefinitely.
{¶ 14} On August 2, 2016, the trial court granted summary judgment in favor of the employer. The court concluded Appellant's affidavit and deposition testimony demonstrated he could not perform the essential functions of the job with the requested accommodation and thus his disability claims failed. The court also found there was no evidence to support Appellant's age discrimination claims; Appellant did not address the age discrimination arguments in responding to the employer's request for summary judgment. Appellant filed a timely notice of appeal.
SUMMARY JUDGMENT
{¶ 15} Summary judgment can be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can *750 only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The movant has the initial burden to show that no genuine issue of material fact exists. Byrd v. Smith , 110 Ohio St.3d 24, 26-27, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing Dresher v. Burt , 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). The non-moving party then has a reciprocal burden. Id. The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E).
{¶ 16} Civ.R. 56 must be construed in a manner that balances the right of the non-movant to have a jury try claims and defenses that are adequately based in fact with the right of the movant to demonstrate, prior to trial, that the claims and defenses have no factual basis. Byrd , 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47 at ¶ 11, citing Celotex Corp. v. Catrett , 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether there exists a genuine issue of material fact, the court is to consider the evidence and all reasonable inferences to be drawn from that evidence in the light most favorable to the non-movant. Jackson v. Columbus , 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11. Doubts are to be resolved in favor of the non-movant. Leibreich v. A.J. Refrig., Inc. , 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993). A court "may not weigh the proof or choose among reasonable inferences." Dupler v. Mansfield Journal Co. , 64 Ohio St.2d 116, 121, 18 O.O.3d 354, 413 N.E.2d 1187 (1980).
{¶ 17} "The material issues of each case are identified by substantive law." Byrd , 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47 at ¶ 12. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. , quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We consider the propriety of granting summary judgment under a de novo standard of review. Comer v. Risko , 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Under a de novo standard of review, we review the entry of summary judgment independently and give no deference to the trial court's decision. Mayhew v. Massey , 2017-Ohio-1016, 86 N.E.3d 758, ¶ 12.
ASSIGNMENT OF ERROR
{¶ 18} Appellant's sole assignment of error provides:
"The trial court erred in granting summary judgment in favor of the Appellee on Matasy's claims of disability discrimination under State and Federal law as there was credible evidence in the record that he could perform the essential functions of his position as a patient care associate with or without reasonable accommodation, Defendant-Appellee failed and refused to engage in the required interactive process, and Defendant-Appellee failed to provide the requested accommodation but instead discharged him from employment."
{¶ 19} Pursuant to R.C. 4112.02, "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * disability * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to * * * any matter directly or indirectly related to employment." A corresponding federal law states it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The definition of discriminate includes the failure *751 to provide reasonable accommodation to an otherwise qualified individual with a disability, unless doing so would impose an undue hardship on the employer's business. 42 U.S.C. § 12112(b)(5). A qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). See also Ohio Adm.Code 4112-5-02(K) (a "qualified disabled person" means "a disabled person who can safely and substantially perform the essential functions of the job in question, with or without reasonable accommodation, and who is not excluded from the coverage of Chapter 4112. of the Revised Code").
{¶ 20} To the extent Ohio's disability discrimination law and the federal disability discrimination law coincide, Ohio courts can use federal case law for guidance. Columbus Civ. Serv. Comm. v. McGlone , 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998) (applying an EEOC regulation). When the plaintiff claims he was fired because he was disabled, the plaintiff must set forth a prima facie case by showing: (1) he was disabled; (2) an adverse employment action was taken by an employer, at least in part, due to the disability; and (3) he can safely and substantially perform the essential functions of the job. Hood v. Diamond Products, Inc. , 74 Ohio St.3d 298, 302, 658 N.E.2d 738 (1996).[3]
{¶ 21} In moving for summary judgment, the employer contested the third element. Appellant admits he could not perform the essential functions of the job on January 16, 2013, at the time additional extended leave was denied and he was terminated. However, Appellant claims he could have performed the essential functions if his requested accommodation had been granted, citing DeCesare v. Niles City School Dist. Bd. of Edn. , 154 Ohio App.3d 644, 2003-Ohio-5349, 798 N.E.2d 655, ¶ 23 (11th Dist.) (which held the employee must demonstrate: "(1) they were disabled, (2) the employer knew of the disability, and (3) they were qualified for the position, i.e., they met the prerequisites for the position and could perform the essential functions of the job with, or without, reasonable accommodations.").
{¶ 22} If an employee, who is known by the employer to be disabled, was denied a requested accommodation, the employee's prima facie case includes a requirement that he demonstrate he is otherwise qualified for the position, i.e., with the reasonable accommodation. Barber v. Chestnut Land Co. , 2016-Ohio-2926, 63 N.E.3d 609, ¶ 72, citing DiCarlo v. Potter , 358 F.3d 408, 419 (6th Cir. 2004). See also Ohio Civ. Rights Comm. v. Case W. Res. Univ. , 76 Ohio St.3d 168, 176, 666 N.E.2d 1376 (1996) (finding the inquiry into reasonable accommodation is not separate from the inquiry into whether the employee is otherwise qualified and part of the prima facie case for disability discrimination in education is a showing the employee could safely and substantially perform the essential requirements of the program with reasonable accommodation), citing Ohio Adm.Code 4112-5-02(K).
{¶ 23} The plaintiff has the burden to propose an accommodation that is *752 objectively reasonable, and the employer would then have the burden to demonstrate such accommodation would impose an undue hardship on the conduct of the employer's business. Barber , at ¶ 72, citing Keith v. County of Oakland , 703 F.3d 918, 927 (6th Cir. 2013). The employer acknowledges that in certain situations, a medical leave of absence can be a reasonable accommodation. See Foster v. Jackson Cty. Broadcasting, Inc. , 4th Dist. No. 07CA4, 2008-Ohio-70, 2008 WL 109649, ¶ 21 (4th Dist.). The employer notes an employer need not wait indefinitely. Id. Barber , at ¶ 72, quoting Crosier v. Mfg. Co. , 9th Dist. No. 19863, 2001 WL 196511 (Feb. 28, 2001) ("While employers are required to make reasonable accommodations for an injured worker, at a certain point, holding a job open becomes unreasonable.").
{¶ 24} Nevertheless, the dispositive argument below was Appellant lacked evidence to establish a prima facie case that he was qualified for the position with the accommodation of extended leave; this was the issue decided by the trial court. The court concluded: "he could not perform the essential functions of the job, with the requested accommodation. Thus, Matasy was not qualified for the position and Matasy cannot establish an essential element of his claims for disability discrimination." The dispute is whether Appellant could have met the prerequisites of the position and performed the essential duties with accommodation.
{¶ 25} Appellant notes there was history of him returning from leave and engaging in light-duty or part-time work. He suggests if he had been granted the extended leave, he could have later sought reduced duties. Appellant alleges the employer failed to engage in the interactive process in good faith in order to assist him in seeking an accommodation, citing DeCesare , 154 Ohio App.3d 644, 2003-Ohio-5349, 798 N.E.2d 655 at ¶ 26 (in order to show an employer failed to participate in the interactive process, an employee known to be disabled must demonstrate he requested accommodation and he could have been reasonably accommodated but for the employer's lack of good faith in assisting him).
{¶ 26} The employer states it engaged in the interactive process: Appellant's initial leave request was October 5, 2012 through November 7, 2012; the employer granted the request until November 30, 2012; this exhausted the employee's FMLA balance due to prior leaves that year; the employer granted Appellant's request to extend his leave until December 31, 2012; and the request for another extension was not signed by Appellant until January 3, 2013, after the last extension had expired. Appellant suggests a long term disability form would have provided adequate notice to the employer prior to December 31, 2012 (the expiration of his already extended leave). His response to summary judgment cited Exhibit T to the Stone Deposition. However, this exhibit demonstrated the disability form was signed by Appellant's physician on January 4, 2013. In addition, we note the witness explained, although leave of absence forms are part of her duties, disability paperwork is not. (Stone Depo. at 10, 48). We also note only three pages of a nine-page document were presented to the witness and marked as an exhibit; this was specifically noted by counsel on the record at deposition. (Stone Depo. at 50). See also fn. 2 supra.
{¶ 27} The employer also states further engagement in the interaction process was irrelevant as Appellant was unable to perform the essential functions of his position both before and after his requested return to work date. It may be necessary for an employer of a disabled *753 employee to engage in an "interactive process" in order to determine what reasonable accommodation would enable the employee to continue working. See, e.g., 29 C.F.R. 1630.2(o)(3). However, the liability imposed is for the failure to reasonably accommodate, not for the failure to engage in the interactive process. See, e.g., 42 U.S.C. 12112(b)(5)(A)-(B). As such, failure to engage in the interactive process is not an independent basis for liability. Sheng v. M & T Bank Corp. , 848 F.3d 78, 87 (2d Cir. 2017).
{¶ 28} "Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." Basden v. Professional Transp., Inc. , 714 F.3d 1034, 1039 (7th Cir. 2013). See also McBride v. BIC Consumer Products Mfg. Co. , 583 F.3d 92, 101 (2d Cir. 2009) ("we adopt the reasoning of our sister Circuits and hold that an employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue.")
{¶ 29} Appellant states there is a genuine issue of material fact as to the essential functions of his position and whether he could perform those essential functions. However, as to the first contention, Appellant submitted the deposition of the employer's human resources employee, who explained her understanding of the job functions. While questioning this witness, Appellant introduced as an exhibit the official job description provided by the employer, which listed various work demands and duties. Appellant explained the job functions in his deposition testimony. Appellant did not indicate certain delineated criteria were not essential. For instance, Appellant did not contend patient care (including movement in and out of bed) or transporting supplies and patients were not essential functions of the position. He introduced evidence that lifting 18-25 pounds, crouching, kneeling, and twisting were frequently required of the position. In addition, Appellant testified only one pca was on duty at a time to care for approximately twenty patients in the department. There was no indication Appellant was disputing the essential functions of the job.
{¶ 30} The motion for summary judgment focused on whether Appellant could have safely and substantially fulfilled the essential functions of the position, to which Appellant responded by claiming the evidence showed he could have returned to work on February 11, 2013. The employer contends Appellant failed to provide evidence he could have performed his essential job functions if leave was extended until February 11, 2013, which is the accommodation he requested.
{¶ 31} As for the contents of the medical note, the employer argues a medical note written on December 27, 2012, projecting Appellant could return to work without restrictions on February 11, 2013, was not evidence that once that date arrived, Appellant was in fact able to return to work. (It is noted Appellant sought an extension until December 31 using a medical note, but he was then unable to return to work on that date.) As raised below, the employer also contends the December 27, 2012 medical note (stating Appellant could return to work on February 11, 2013 without restrictions) was not proper summary judgment evidence on the issue of whether he was physically able to return to work.
*754 See Civ.R. 56(C) (no evidence may be considered except as stated in the rule, which refers to pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations).
{¶ 32} Appellant initially counters by arguing no motion to strike was sought or granted. However, this is not a required procedure. Even when there is no objection, the trial court can refuse to consider improper summary judgment evidence. In this case, the trial court did not rely on the medical note. Until Appellant responded to summary judgment, the employer would have been unaware Appellant would not be submitting an affidavit specifically tailored to respond to the motion for summary judgment. The employer's reply in support of summary judgment objected to Appellant's use of the medical note (in his opposition to summary judgment) as evidence his physician was of the medical opinion he would have been able to return to work without restrictions on February 11, 2013.
{¶ 33} Appellant then relies on the fact that the medical note was incorporated into various types of summary judgment evidence, such as his own affidavit and the deposition of the employer's human resources employee. This type of incorporation could be used to show what information was provided to the employer as medical certification was required when seeking a leave or an extension of leave. The medical note could have been incorporated into an affidavit from the doctor wherein he could have provided his opinion. However, a party cannot incorporate a doctor's note into his own affidavit as proof of the doctor's factual medical opinion. (And again, the opinion was made at a time when Appellant was unable to return to work and constituted a projection.)
{¶ 34} This is not to say an expert opinion was required (as the employer contends). "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. Compare Evid.R. 702(A) (a witness may testify as an expert if the witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons, the witness is qualified, and the testimony is based on reliable specialized information).
{¶ 35} "Unless a matter is within the comprehension of a layperson, expert testimony is necessary." Ramage v. Cent. Ohio Emergency Servs., Inc. , 64 Ohio St.3d 97, 102, 592 N.E.2d 828 (1992). In some cases, an employee may testify as to whether they would have been able to return to work on a certain date. The accommodation requested here was more time. We conclude Appellant could have personal knowledge as to whether he would have been able perform his job on a certain date. See Stern v. St. Anthony's Health Ctr. , 788 F.3d 276, 294 (7th Cir. 2015), fn. 11 (expert testimony is not necessarily required for the plaintiff to show he was a qualified individual; "the more a job's essential functions are outside the competence of a typical juror, the more likely expert testimony may assist in proving an ADA plaintiff's case.").
{¶ 36} The next question is whether Appellant provided summary judgment evidence, such as his own statement, that he could have returned to work with the accommodation of leave until February 11, 2013. As the employer points out, Appellant admitted he could not work at this job in January 2016 due to his hip and knees. Appellant notes he had foot issues contributing *755 to his condition at the time of deposition. However, he specifically testified his knee and hip would prohibit him from performing the job. Nevertheless, Appellant urges his inability to work in late 2015 and early 2016 as a result of his past knee and hip surgeries does not necessarily mean these issues prevented him from working in February 2013.
{¶ 37} The employer then emphasizes Appellant's situation a month before and a month after the dispositive date of February 11, 2013. Appellant testified he was unable to work on January 16, 2013. (Matasy Depo. 46). Thereafter, he signed an affidavit on March 13, 2013, stating his disability substantially impairs his ability to perform major life functions of walking, bending, kneeling, and working . At deposition, he testified this was true when he signed the affidavit. (Matasy Depo. 54-55). The employer believes this establishes Appellant was still unable to fulfill the essential functions of his position on March 13, 2013.
{¶ 38} Appellant counters by stating this merely attested to his disability to show he was discriminated against. He urges it was not an admission he was unable to perform the essential functions of his position (with or without reasonable accommodation). He points to his deposition testimony that he was released to go back to work in February and he stopped using a cane sometime in February. (Matasy Depo. 50-51). He notes he was never asked at deposition whether he could have returned to work on February 11, 2013 and contends the employer cannot fail to ask him this question and then use the lack of answer as evidence against him.
{¶ 39} Yet, it was the not the employer's obligation to generate evidence to support Appellant's cause of action. The employer pointed to evidence suggesting Appellant was unable to perform the essential functions of his job with the requested accommodation of extended leave until February 11, 2013. This placed the reciprocal burden on Appellant to show he could have returned to work on that date and to demonstrate there was a genuine issue of material fact on the contested element of his prima facie case of failure to accommodate. The element of his case contested by the employer's motion was that he was not qualified to work. See, e.g., Cehrs v. Northeast Ohio Alzheimer's Research Ctr. , 155 F.3d 775, 782 (6th Cir. 1998) ("The employer, however, does not need to prove that the employee was unqualified. Instead, the employee must bear the burden throughout the litigation of proving that she is qualified.").
{¶ 40} It was not the employer's obligation at deposition to elicit evidence which could have been favorable to the employee's case. Where such evidence could have been but was not elicited, the reciprocal summary judgment burden necessitates the filing of an affidavit signed by the employee or his physician, for instance. In other words, regardless of whether Appellant's March 2013 statement constituted an "admission," it was his obligation to clarify the situation upon being presented with the employer's summary judgment argument. It could be said he was asking the court to speculate he was able to return to work.
{¶ 41} Lastly, Appellant states he applied for similar jobs starting in March 2013 and performed volunteer work at a hospital in October 2013; he suggests this was some evidence of his ability to perform his job in February 2013. As to volunteering, the proximity in dates is not close to the date utilized to prove his claim, and there is no indication the volunteer work had similar requirements. In fact, his answer to an interrogatory explained he "passed water and distributed mail" in his *756 volunteer position. Regarding the job search, documents produced in response to discovery requests do not automatically become summary judgment evidence. Merely because an interrogatory asks a party to identify all documents intended to be introduced at trial or that were reviewed in answering interrogatories and the party answered "See documents provided" does not make the contents of all attachments qualify as answers to interrogatories and thus proper summary judgment evidence. A trial court could consider them in the absence of objection but need not.
{¶ 42} This observation applies to certain other documents produced in discovery and attached to Appellant's memorandum in opposition to summary judgment as well. For instance, Appellant attached an Americans with Disabilities Act Questionnaire he signed on March 26, 2013. Appellant relies on this document to show he answered "yes" when asked if he was able to perform his duties with or without an accommodation; he also answered that he requested the accommodation of additional leave from his employer. It does not state he could return to work on February 11, 2013 as he suggests. In any event, this document was not notarized and thus was not an affidavit.
{¶ 43} For all of the foregoing reasons, this court affirms the trial court's decision granting summary judgment to the employer.
Waite, J., concurs.
DeGenaro, J., concurs.

Although this is not a breach of contract action, Appellant uses the agreement to show an extension of leave would have been an available and reasonable accommodation as his left knee replacement issue had not yet involved six months off from work.

The physician listed the return to work date as February 11, 2013 but listed Appellant's next appointment as April 10, 2013 and said Appellant's last appointment was on December 12, 2012.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. Hood , 74 Ohio St.3d at 302, 658 N.E.2d 738 (legitimate, nondiscriminatory reason offered by employer can be that employee cannot safely and substantially perform essential functions of job with reasonable accommodation). If a nondiscriminatory reason is proffered, the burden shifts back to the employee to show that the employer's stated reason was a pretext for impermissible discrimination. Id.