[Cite as *In re J.R.P.*, 2018-Ohio-3938.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### MAHONING COUNTY

## IN THE MATTER OF:

## J.R.P.

## and

## J.A.P.,

## ALLEGED DEPENDENT CHILDREN

---

### OPINION AND JUDGMENT ENTRY
### Case No. 17 MA 0169

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio
Case Nos. 2013 JC 972; 2013 JC 973

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Matthew C. Giannini*, 1040 South Commons Place, Suite 200, Youngstown, Ohio 44514 and
*Atty. Louis E. Katz*, 70 West McKinley Way, Suite 16, Poland, Ohio 44514, for Appellants

*Atty. David S. Barbee*, Roth, Blair, Roberts, Strasfeld & Lodge, 100 East Federal Street, Suite 600, Youngstown, Ohio 44503-1893, for the Court Appointed Special Advocate Program (CASA)

*Atty. Christopher A. Maruca*, The Maruca Law Firm, LLC, 201 East Commerce Street Suite 200, Suite 316 Youngstown, Ohio 44503, for Appellees.

Dated:  September 27, 2018

WAITE, J.

{¶1}   Appellants husband and wife appeal the Mahoning County Court of Common Pleas, Juvenile Division's order granting custody of minor children, J.R.P. and J.A.P. to Appellees, the children's maternal grandfather and his husband.  Appellants are distant paternal cousins of the children.  Appellants raise multiple issues on appeal including the application of the appropriate statute; consideration of the guardian ad litem's testimony; and whether the trial court abused its discretion in granting custody to the maternal grandfathers.  This record reflects that the trial court applied the appropriate statute in a custodial matter between two nonparent parties and that the testimony of the guardian ad litem was properly admitted and considered by the trial court.  Applying the appropriate statutory factors, the trial court did not abuse its discretion in granting custody of the minor children to the maternal grandfathers.  Based on the following, the judgment of the trial court is affirmed.

Procedural History

{¶2}   This matter originated as a result of an abuse, dependency and neglect case filed by the Mahoning County Children Services Board ("CSB").  Minor child, J.A.P., born 5/10/2013, suffered serious injuries at the hands of his Father when Father stuffed baby wipes down the child's throat when the child was eight weeks of age.  Mother admitted she was unable to care for the children.  Consequently, J.A.P. and his sister, J.R.P., born 5/21/2012, were removed from the home.  On July 8, 2013, CSB filed an *ex parte* motion for custody of the minor children.  Criminal charges were filed against Father and he has

Case No. 17 MA 0169

remained incarcerated throughout these proceedings. The trial court granted the *ex parte* motion. On July 9, 2013, a shelter care hearing was held. After hearing, the trial court found that it was in the children's best interest for CSB to be granted protective custody.

{¶3} On September 9, 2013, the trial court determined that the children were abused, dependent and neglected. Temporary custody was granted to their maternal grandmother, ("Grandmother"). On January 21, 2014, CSB filed a motion to terminate court ordered protective supervision. A hearing was held before a magistrate on March 17, 2014. At the conclusion of the hearing, it was determined that protective supervision would be terminated. Due to health problems, Grandmother was no longer able to care for the children at this point. CSB filed a motion to transfer custody to Appellants, who were present at the hearing. The trial court adopted the magistrate's decision on April 14, 2014.

{¶4} On July 10, 2014, Mother filed a motion seeking custody of the children. A guardian ad litem ("GAL") was appointed in the matter and it was set for hearing on November 9, 2014, however, this hearing was continued at Appellants' request. On December 2, 2014, Appellees filed a motion to intervene in the matter and filed a motion for custody. A hearing was held on December 19, 2014. Mother withdrew her complaint for custody and Appellees' motion to intervene was granted. On March 26, 2015, a hearing was held to determine Appellees' motion for custody. While the GAL had recommended Appellees be given custody, the trial court, applying R.C. 3109.04(E), concluded Appellees had not met their burden of proof and denied the motion for custody. Neither Mother nor Father were present at that hearing.

{¶5} Due to an error by the trial court, the magistrate's March 26, 2015 decision was not filed until October 30, 2015. The trial court adopted it on October 30, 2015.

However, on November 12, 2015, Appellees filed objections to the magistrate's decision and the matter was set for January 6, 2016. At this hearing, the trial court concluded that the transcript of the hearing to the magistrate that was filed with the court was only a partial transcript. This was due to a technological error at the court, and not an error caused by a party. The court elected to set the matter for a trial *de novo* and ordered a visitation schedule between the parties. On January 12, 2016, Appellants filed a motion in opposition to third party visitation and requested either child support or transportation expenses. Appellants secured new counsel and filed a motion to continue the pretrial hearing that had been set for February 24, 2016. This motion was granted and pretrial was set for April 28, 2016. At the pretrial, the court set the matter for trial on August 3, 2016. On August 2, 2016 Appellants filed a motion for a continuance and trial was continued to October 10, 2016. On October 10, 2016, as trial was set to commence, the court determined that service had not been perfected on either Mother or Father. The trial was continued to January 6, 2017 and the court again set a visitation schedule for the parties.

{¶6} On November 14, 2016, Appellants filed a motion to dismiss on the basis that they had filed a petition for adoption of the children in the Mahoning County Probate Court. Appellees filed a motion in opposition. On December 22, 2016, Appellants filed a writ of prohibition in this Court, challenging the trial court's jurisdiction over custody proceedings because the children were also the subject of adoption proceedings. (Case No. 16 MA 0195). On January 26, 2017, Appellants voluntarily dismissed their request for writ of prohibition, stating that the parties had reconciled their differences and the adoption matter would not proceed.

Case No. 17 MA 0169

{¶7}   On February 8, 2017, Appellants filed a motion seeking to be granted legal custody of the children.   On February 17, 2017, the trial court, yet again, ordered a visitation schedule and set a new trial date of May 3, 2017.

{¶8}   On March 15, 2017, Appellants filed another petition in this Court, now seeking a writ of mandamus.   Appellants sought to compel the trial court judge to act on their motion for legal custody.   The juvenile court, as Respondent, filed a motion to dismiss. On September 7, 2017, we dismissed Appellants' petition, concluding that it had been filed prematurely and that the filing of the petition itself was now causing delay in the proceedings below.   (7th Dist. Case No. 17 MA 0047).   In fact, because of the pending petition, the trial dates which were originally set for May had to be continued to October of 2017.

{¶9}   On May 15, 2017, Appellants filed yet another writ with this Court.   This time they sought a writ of procedendo.   We again dismissed the writ, noting that the proceedings below had not been unduly delayed and that the writ itself, again, was the cause of delay.

{¶10}  A trial on the merits was held October 16 – 20, 2017.   Both parties presented testimony from several witnesses and a number of exhibits were admitted into evidence. The court-appointed GAL also testified.   Five written reports drafted by the guardian ad litem, spanning a period of approximately three years of investigation, were offered.   The trial court took judicial notice of the reports and they were made part of the trial court record under seal.   The trial court issued its judgment entry on November 22, 2017, granting legal custody of the minor children to Appellees.

<u>Factual History</u>

{¶11} We note again that this arose in a dependency case involving two minor children, J.A.P. and J.R.P. Abuse occurred in July of 2013 when J.A.P. was eight weeks old that caused significant injury to the child. Father was criminally charged as a result and has been incarcerated throughout these proceedings. Mother has been unable to care for the children. Appellants are distant cousins of Father and live in Mahoning County. Appellees are the children's maternal grandfather and his husband; they live in Massachusetts. Appellees have adopted an older sibling of the minor children at issue and also have custody of the children's younger sibling.

{¶12} Temporary custody was originally granted to Grandmother after the children were removed from their home by CSB. Appellants had no relationship with the minor children prior to this, but began visiting Grandmother and the children at that time. Also at that time, Appellees contacted CSB expressing a desire to have custody of the children, but were informed that obtaining a long distance custody arrangement would take an extended period of time. Hence, Appellees were in agreement that Grandmother be appointed temporary custodian of the children. They did not pursue custody at that time, but did contact Grandmother weekly to discuss the children. Mother lived with Appellees for approximately one year before returning to Mahoning County shortly before trial, and had daily interaction with her other two children. Mother maintained regular visitation with the two children at issue in this case while they were under Grandmother's care.

{¶13} This temporary custody arrangement lasted until Grandmother became terminally ill and was unable to care for the children. Although CSB was aware of Appellees' desire to obtain custody of the children because of their previous call to CSB, Appellees were not contacted about the transfer of temporary custody from Grandmother,

Case No. 17 MA 0169

and temporary custody of the children went from Grandmother to Appellants. Appellees did not learn Appellants had custody of the children until they attended Grandmother's funeral in October of 2014. Appellees visited with the children at that time and, the following month, met with the GAL and hired counsel in order to pursue a change of custody with the trial court.

{¶14} During the pendency of the matter, the parties have had a contentious relationship. Visitation was an ongoing concern. Appellants were not cooperative in allowing Appellees to have visitation with the children, necessitating several visitation orders be ordered by the trial court once Appellees' motion to intervene was granted. Initially, Appellants insisted that all visits with the children occur only in the presence of the guardian ad litem and in the lobby of the hotel where Appellees stayed on visits to Youngstown. Appellants habitually monitored Appellees' visits. During one visit when the children were staying at a local hotel with Appellees, Appellant husband drove around the parking lot looking for Appellees' vehicle. When he could not find it, he contacted the local police department, alleging that Appellees had kidnapped the children. Testimony at trial revealed several such contentious interactions. Eventually, the court granted extended visitation, permitting Appellees to return to Massachusetts with the children and ordering the parties to meet in Pennsylvania for the exchange, or that Appellees were to be responsible for all of the transportation. Appellants never permitted Appellees into their home and Appellees had limited contact with Appellants due to Appellants' refusal to engage meaningfully while they had the children.

{¶15} Another major area of contention was in providing the appropriate level of physical, occupational and speech therapy for both children. J.R.P. was born prematurely.

As a result, the child has undergone various forms of therapy. J.A.P. experienced significant injury as a result of his Father's abuse and has required therapy as a result. The child has other physical restrictions; for instance a thickener must be added to any fluids he ingests due to a danger of aspiration. Both children have exhibited developmental delays since birth and attended Easter Seals while under Grandmother's care. Once the children were placed in Appellants' custody, consistent physical, occupational and speech therapy was not provided and any therapy that was provided was only that which was available in their respective preschools, but never on a consistent basis. The record also reveals a gap of over a year where the children did not receive any therapy while under Appellants' care. Appellants have been inconsistent with their stance on whether the children even require therapy. For example, J.A.P. requires more assistance for his disabilities than J.R.P., but according to Appellant wife, there was a discontinuation of therapy for J.A.P. from March of 2014 through September of 2016. (Tr., p. 787.) Moreover, Appellants argue both that therapy is not needed and, to the contrary, that J.A.P. qualifies for several services through the county. (Tr., pp. 704, 787). Testimony from Appellants' witnesses at trial acknowledged that the Head Start program in which they were enrolled was merely for Appellants' "convenience," since Appellant wife was employed there, but that this program did not provide adequate therapy services for the children or prepare J.R.P. for kindergarten. (Tr., pp. 680, 788, 790-791.)

{¶16} Appellees testified that Appellants never told them that the children required any special accommodations originally, including failing to provide Appellees with the "thickener" for J.A.P.'s drinks or to even tell them that this was necessary because he had difficulty swallowing liquids as a result of his injuries. Appellants failed to inform Appellees

that J.A.P. had tubes placed in his ears when Appellees were planning on swimming with the children in the hotel pool. (Tr., pp. 190-192; 875, 876-877.) The GAL also testified that Appellants never informed her of any of the therapies necessary for the children, even up to the day of trial. (Tr., pp. 894-895.) The GAL found out about the ear tubes from Appellees and learned of the physical, occupational and speech therapies by visiting the children's preschool to talk with their teachers. (Tr., pp. 895-895.) Appellees and the GAL all testified that Appellants consistently denied them access to the children's medical records and repeatedly indicated that everything was fine when asked about the children's health. (Tr., pp. 49, 878.) Once Appellees were able to have long-term visits with the children in Massachusetts beginning in January of 2016, they sought medical care and obtained physical, occupational and speech therapy screenings on the children. The children attended therapy approximately two to three times weekly during their six-week visit with Appellees. (Tr., pp. 73, 200.)

{¶17} This record reveals that the matter of determining legal custody was pending for an extended period of time. We note that Appellees sought a continuance at the beginning of the proceedings because they had recently obtained counsel, which was denied. This was the only continuance sought by Appellees. However, Appellants have sought and obtained multiple continuances for several reasons, including their multiple filings to this Court, which caused additional delays. The trial court acknowledged that a seven-month delay in filing the first magistrate's decision also contributed to the extended period of time in which the matter remained unresolved. Finally, at the conclusion of the multi-day trial, the trial court awarded custody to Appellees. Appellants now file this timely

appeal presenting eleven assignments of error. The assignments of error will be addressed out of numerological order for ease of analysis.

ASSIGNMENT OF ERROR NO. 1

THE JUVENILE COURT ERRED AS A MATTER OF LAW IN PROVIDING A SUMMARY OF TESTIMONY INSTEAD OF MAKING FINDINGS OF FACT.

**{¶18}** In their first assignment of error, Appellants contend the trial court erred in providing only a summary of the evidence rather than making actual findings of fact in this case.

**{¶19}** Citing *Buzinski v. Buzinski,* 5th Dist. No. CA-9304, 1993 WL 544358, Appellants claim that in its decision, the trial court merely recited all of the evidence that was presented instead of setting out only those facts the trial court deemed important, and that the judgment of the trial court should be reversed on this basis. Appellants also rely on *Werden v. Crawford,* 70 Ohio St.2d 122, 435 N.E.2d 424, 426 (1982), to urge that we cannot adequately review this matter absent the trial court's findings of fact. In *Buzinski,* the judgment of the trial court was reversed and remanded where the one page judgment entry failed to provide any factual basis for its conclusion. In *Werden,* the Ohio Supreme Court concluded that in custody proceedings, Civ.R. 52 requires separate findings of fact and conclusions of law only on a party's timely request. *Werden,* syllabus. Neither case applies in the instant matter.

**{¶20}** To be sure, the Ohio Supreme Court has noted "that a trial court has a mandatory duty under Civ. R. 52 to issue findings of fact and conclusions of law upon request timely made." *In re Adoption of Gibson,* 23 Ohio St.3d 170, 173, 492 N.E.2d 146

(1986). However, we have held that there is no mandatory requirement for such findings in the absence of a timely request. *In re D.D.D.,* 7th Dist. No. 12 JE 7, 2012-Ohio-5254, ¶ 35. No request was made by Appellants in this matter.

**{¶21}** Notwithstanding this determination, there are statutory provisions that require the trial court to issue findings of fact and conclusions of law in certain circumstances. R.C. 2151.28(L) requires the trial court to issue findings of fact and conclusions of law in a hearing on a complaint alleging a child is abused, neglected and dependent pursuant to R.C. 2151.28(A). The instant trial was not held for this purpose, but instead was for the purpose of determining legal custody of the children following this determination. While these facts show the trial court was not required to set forth its findings of fact and conclusions of law, the court was certainly permitted to provide the extensive fifteen-page judgment entry detailing the facts presented at trial. Under a heading entitled, "Statement of Facts" the trial court sets forth facts which were derived from the trial testimony and evidentiary materials. Not merely a complete recitation of each witness's testimony as alleged by Appellants, the judgment entry discusses pertinent factual information which, after having an opportunity to judge the demeanor and determine the credibility of each witness, the trial court clearly found credible and relevant to its legal conclusions. Appellants' contention that the trial court failed to provide findings of fact is without merit and their first assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO APPLY R.C.3109.04 IN THIS CASE.

ASSIGNMENT OF ERROR NO. 3

THE JUVENILE COURT ERRED BY FAILING TO PROVIDE ANY ANALYSIS OF THE STATUTORY FACTORS SET FORTH IN R.C. 3109.04(F).

<u>ASSIGNMENT OF ERROR NO. 5</u>

THE JUVENILE COURT ERRED AS A MATTER OF LAW BY CHANGING CUSTODY WITHOUT A FINDING (OR EVEN MENTIONING) THAT "THE HARM LIKELY TO BE CAUSED BY A CHANGE OF ENVIRONMENT IS OUTWEIGHED BY THE ADVANTAGES OF THE CHANGE OF ENVIRONMENT TO THE CHILD" AS REQUIRED BY R.C. 3109.04(E)(1)(a).

**{¶22}** Appellants' second, third and fifth assignments of error all relate to the trial court's application of R.C. 2151.42 rather than R.C. 3109.04 in making its custody determination in the instant matter. Appellants contend the trial court failed to apply the appropriate statute, requiring reversal.

**{¶23}** A determination of legal custody by the juvenile court will only be reversed for an abuse of discretion. *In re D.D.D.,* 7th Dist. No. 12 JE 7, 2012-Ohio-5254. Appellants argue that the trial court misinterpreted the statutory framework applicable in this matter and failed to apply the relevant statutory provision when awarding custody to Appellees.

**{¶24}** A trial court's interpretation and application of a statute is an issue of law, which we review *de novo. In re A.K.,* 7th Dist. No. 08 MA 193, 2009-Ohio-5074, ¶ 18 citing *Skirvin v. Kidd,* 174 Ohio App.3d 273, 2007-Ohio-7179, 881 N.E.2d 914, ¶ 14 (4th Dist.). A *de novo* review by the appellate court necessitates an independent

consideration of the trial court's judgment without any deference to the trial court's determination. *Matasy v. Youngstown Ohio Hospital Company, LLC,* 7th Dist. No. 16 MA 0136, 2017-Ohio-7159, 95 N.E.3d 744, ¶ 17, citing *Mayhew v. Massey,* 2017-Ohio-1016, 86 N.E.3d 758, ¶ 12 (7th Dist.).

**{¶25}** Appellants rely on *In re D.D.*, 7th Dist. No. 17 CA 0914, 2017-Ohio-8392, 100 N.E.3d 141 for the proposition that before the trial court could award legal custody to Appellees, it was required to apply the factors enumerated in R.C. 3109.04(E)(1)(a) and determine not only whether the award was in the best interest of the child, but first, whether a change in the children's or the current custodian's circumstances had occurred. The trial court rejected Appellants' argument and relied on R.C. 2151.42(A) to modify an award of temporary custody which was granted in a dependency proceeding. (11/22/17 J.E., p. 13.) *In re D.D.* involved a custody dispute between a father and a maternal uncle. We held that the trial court did not err in awarding custody to the maternal uncle over the father after a finding that the father was unsuitable under the standard set forth in *In re Perales,* 52 Ohio St.2d 89, 96, 369 N.E.2d 1047 (1977). We specifically noted that the trial court in *In re D.D.* did not apply R.C. 3109.04. In a footnote in *In re D.D.* we opined that, should the parent seek custody from the nonparent in the future, the change in circumstance/best interest factors found in R.C. 3109.04 would apply to this change in custody rather than the *Perales* unsuitability standard.

**{¶26}** Appellants' reliance on *In re D.D.* is misplaced. We agree that "custody of a child is a 'fundamental liberty interest' of a parent," *Id.,* at ¶ 12 quoting *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d. 599 (1982). However, where

there is a custody dispute between two nonparents, no such fundamental liberty interest exists. Moreover, the instant matter involves children who were adjudicated abused, neglected and dependent. No such adjudication occurred in *In re D.D.* The court in *In re D.D.* was making a final determination of custody in a matter that involved charges of unsuitability of a parent. This determination was between the parent and a nonparent. Certainly, where final custody determinations are made and involve parents, R.C. 3109.04 is applicable should the parent seek to change this final custody award. However, as we will explain, R.C. 2151.42(A) applies in cases where children were previously adjudicated abused, neglected and dependent, were removed from the home, and the trial court is faced with making a final custody award, even when no person seeking legal custody is a parent. Our holding in *In re D.D.* is not relevant in the instant matter.

{¶27} Appellants also cite our decision in *Allison v. McCune,* 7th Dist. No. 15 MA 0208 for the proposition that the juvenile court must exercise jurisdiction in accordance with R.C. 3109.04. *Id.* at ¶ 31. In *Allison*, we cited R.C. 2151.23(F)(1) which indicates the juvenile court should exercise its jurisdiction in custody matters in accordance with R.C. 3109.04. *Allison* is also factually inapplicable, because it involved a custody determination between two parents. This distinction is crucial, however, because it is readily apparent that R.C. 3109.04, in both title and substance, solely regards matters involving parents and the final decrees of custody. The matter now before us, on the other hand, involves a dispute where both parties seeking legal custody are nonparents, the children have previously been adjudicated abused, neglected and dependent pursuant to R.C. 2151.353(A)(2)(d) and were removed from the parental home and

placed in temporary custody. R.C. 2151.42(A) provides for the modification of an award of temporary custody which was granted in a dependency proceeding. While this section anticipates that a parent will seek such modification, it appears all the more relevant when the issue of modification of legal custody is between nonparents.

**{¶28}** The trial court relied on the Ohio Supreme Court's decision in *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, which held:

> 2. A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents.
>
> 3. When a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent.

*Id.,* at paragraphs two and three of the syllabus.

**{¶29}** In its judgment entry dated November 22, 2017, the trial court thoroughly addressed the applicable law, concluding:

> The magistrate initially applied ORC Section 3109.04 to the facts of the case. On review, this Court found said application was erroneous as the best interest standard applies. [Appellants'] Counsel asserts that the ORC Section 3109.04 is the prevailing standard however this Court disagrees. This matter arose on the abuse, dependency, and neglect docket and at the time of the Maternal Grandfather and husband's Motion for Custody,

[Appellants] had temporary custody under ORC Section 2151.42. The Court relies on Ohio Revised Code Section 2151.42(A) when modifying an award of temporary custody which was granted in a dependency proceeding. The Court finds *In re C.R.,* at ¶ 16, 108 Ohio St.3d 369 (2005) controlling. Ohio Revised Code Section 2151.011(B)(2) defines "temporary custody" as "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court." Additionally, the case facts show the Minor Children were previously adjudicated abused and dependent, and were placed in the temporary custody first with the Maternal Grandmother and then the [Appellants]. The Ninth Appellant [sic] District ruled that "once a court has exercised jurisdiction over a child, the court has continuing jurisdiction to determine what is in the best interests of the child. Furthermore, O.R.C. Section 3109.04 applies to situations between parents since the philosophy of requiring a change of circumstances in custody issues is based on the presumption that parents are equals and must be treated as such." See *In re A.M.,* 2017 Ohio 7690 [sic] at ¶ 20, CA 28285, 2017 Ohio App. LEXIS 4024. In a juvenile proceeding where the parties are not on equal footing, the change of circumstances standard does not apply. See *In re A.M.,* 2017 Ohio 7690 [sic] at ¶ 17 O.R.C. Section 3109.04 is relevant to a modification of a prior decree allocating parental rights and responsibilities and hence, is not applicable to the case at bar. Importantly, the Ohio Supreme Court has recognized the flexibility

provided in O.R.C. Section 2151, and has eschewed the general rule that "permanency of final orders is a paramount principle." *In re Hockstock,* [sic] at ¶¶ 35and [sic] 98, Ohio St.3d 238, 2002.

(11/22/17 J.E., pp. 13-14.)

**{¶30}** The trial court correctly noted that when children have been adjudicated abused, neglected or dependent, a previous determination as to the unsuitability of the parents has been made and legal custody may be awarded to a nonparent if it is in the child's best interest. *In re Ray,* 7th Dist. Nos. 07 BE 14, 07 BE 15, 2008-Ohio-3250, ¶ 48. On removal from the home, the children in this matter were placed in Grandmother's care. This custody was, by law, "temporary." R.C. 2151.011(B)(2). Once Grandmother was unable to continue caring for the children, new guardians were required and the court used its discretion to discontinue custody in Grandmother and change temporary custody to Appellants. Since Mother filed, but withdrew a motion for custody, not until Appellees sought legal custody was this temporary custody challenged. Because the Appellants had obtained custody pursuant to R.C. 2151.42, any change to that custody is to be considered pursuant to R.C. 2151.42(A), as discussed by the trial court.

**{¶31}** Appellants essentially seek to have the magistrate's decision reinstated. The magistrate utilized the standard set forth in R.C. 3109.04(E)(1)(a) which provides, in relevant part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the

time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

**{¶32}** R.C. 3109.04(E)(1)(a) also requires that the trial court should "retain the residential parent designated by the prior decree" unless certain other factors exist. A plain reading of these provisions leads us to the unescapable conclusion that these apply only when deciding "parental" rights – the rights and duties at stake when at least one of the parties is the child's actual parent. In this case, there has been no previous "decree allocating parental rights and responsibilities," because the children have been removed from their parents, who have been deemed unsuitable. On its face, then, R.C. 3109.04 does not apply when making a custody determination by and between nonparents, especially when any earlier custody decision can only be called temporary and discretionary with the court and did not involve any allocation of "parental rights and responsibilities."

**{¶33}** R.C. 2151.42(A) is applicable in cases where children who were previously adjudicated abused, neglected and dependent were placed in the legal custody of nonparents. The custody of the children at issue in the instant matter was undeniably adjudicated pursuant to R.C. 2151.353(A)(2)(d). Therefore, R.C. 2151.42(A) provides instruction:

At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353, 2151.415, or 2151.417 of the

Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child.

**{¶34}** In this matter, Mother sought to regain custody and then withdrew her request. At this juncture, Appellees and Appellants all sought legal custody. This request is clearly a modification of the earlier, temporary award and relies simply on the "best interests" standards. We realize that, on its face, this section applies when a parent seeks the return of his or her children, which is clearly not the case, here. The trial court cited *In re C.R., supra*, where the Ohio Supreme Court held that when a juvenile court adjudicates a child abused, neglected, or dependent, it has inherently made a determination as to the unsuitability of the child's parents and has no duty to make a separate finding of unsuitability at a dispositional hearing. *Id.*, at paragraphs 2 and 3 of the syllabus. The trial court also cited *In re A.M.,* 9th Dist. No. 28285, 2017-Ohio-7690, 97 N.E.3d 1036, wherein a mother who had previously relinquished custody to nonparents later sought to regain custody of her child. Even though custody was sought by the actual parent, R.C. 2151.42(A) controlled because the Ninth District held that the standard set forth in R.C. 3109.04 only applies where there is a custody matter between a residential and nonresidential parent or parents who are subject to a shared parenting decree. *Id.* at ¶ 14.

**{¶35}** In applying the principles set forth in *In re D.D.* and *In re C.R.,* once a child is adjudicated abused, neglected and dependent a determination regarding the unsuitability of a parent is considered to be inherently part of that proceeding and no further inquiry remains other than the best interest standard. A party seeking legal custody who is a nonparent obviously does not possess the same rights a parent has to

his or her own children. However, Appellants seek to have this temporary custody conflated to a parental right. These children have had their parents deemed unsuitable. The trial court, using its statutorily-granted discretion, placed them with Grandmother as an emergency, stopgap measure. When Grandmother became ill, another emergency, stopgap measure was necessarily taken and custody was given to Appellants. Appellants do not rise to the level of parents, however, and do not step into their shoes and usurp parental rights. Appellants themselves acknowledge this in filing their own motion seeking legal custody (as opposed to the temporary custody granted them) and in briefly seeking adoption. Once Appellees also sought custody, the decision before the trial court was not yet another emergency, stopgap measure for the children, but was more akin to a determination of final custody. For the first time, the trial court was faced with making an award based, not on whether guardians were available, but on which guardians would best provide care for the children: the best interests of the children. The trial court, in accordance with R.C. 2151.42(A), was required to only conduct a best interest determination between two nonparents with respect to the instant matter. A plain reading of all relevant statutes can only lead to this conclusion; to rule otherwise would be to elevate Appellants' interests here to that of the children's actual parents. We recognize that not only do the statutes clearly state otherwise, but Mother in this case has not lost her parental rights to her children, she has simply lost custody. The trial court did not err in applying R.C. 2151.42. Appellants' second assignment of error is without merit and is overruled.

{¶36} In Appellants' third and fifth assignments they also contend that R.C. 3109.04 should apply in this case. Specifically, Appellants rely on the factors

enumerated in R.C. 3109.04(F) and R.C. 3109.04(E)(1)(a) to argue that the trial court did not undertake a thorough analysis prior to giving custody to Appellees. Again, the language of R.C. 3109.04 is directed, in virtually all sections, specifically to "parents." The General Assembly did not utilize the word "custodian" or "temporary custodian," but intentionally used "parent" in drafting the factors set forth in R.C. R.C. 3109.04(F). That said, and despite the inapplicability of R.C. 3109.04(F) to the matter at issue, the record reveals that the court provided an exhaustive analysis of similar concerns, including Appellants' inability to foster communication with both Mother and Appellees; Appellants' failure to provide consistent therapies for the children; and continued and repeated dishonesty and evasiveness with both Appellees and the GAL, among other issues. Thus, although we conclude the trial court applied the appropriate statute, the record reveals the trial court conducted a meaningful analysis that provides a basis for its determination. See *McCune* at ¶ 46. Appellants' third assignment of error is without merit and is overruled.

**{¶37}** We also conclude that R.C. 3109.04(E)(1)(a) does not apply in this matter. It is apparent from the language of the statute that it provides an analysis to be conducted, not as part of a custody determination between two nonparent parties after an adjudication of abuse, neglect and dependency, but between two parents after a final custody decree has been issued:

> The court shall not modify a prior decree allocating parental rights and
> responsibilities for the care of children unless it finds, based on facts that
> have arisen since the prior decree or that were unknown to the court at the
> time of the prior decree, that a change has occurred in the circumstances

of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i)  The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii)  The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii)  The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a).

{¶38}  Appellants claim that R.C. 3109.04(E)(1)(a) creates a strong presumption that the trial court should retain the status quo in all change of custody matters.  Again, no persons seeking custody, here, are parents and a review of the statute and caselaw in this area reveals that the juvenile court's inquiry was limited to whether the transfer of legal custody of the children from Appellants to Appellees was in the best interest of the children.  Appellants' fifth assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 6

THE JUVENILE COURT ERRED AS A MATTER OF LAW IN USING THE GUARDIAN AD LITEM'S TESTIMONY IN DETERMINING CUSTODY WHEN THE GUARDIAN WAS UNAWARE OF THE STATUTORY FACTORS AS TO BEST INTERESTS SET FORTH UNDER R.C. 3109.04(F).

## ASSIGNMENT OF ERROR NO. 8

THE JUVENILE COURT ERRED BY IMPROPERLY ALLOWING THE GUARDIAN AD LITEM TO GIVE HEARSAY TESTIMONY AND TO TESTIFY TO MATTERS BEYOND HER KNOWLEDGE.

## ASSIGNMENT OF ERROR NO. 10

THE JUVENILE COURT ERRED IN TAKING JUDICIAL NOTICE OF THE FIVE GUARDIAN REPORTS, ONE OF WHICH RELATED TO A PRIOR PROCEEDING AND NONE OF WHICH WERE ADMITTED INTO EVIDENCE.

{¶39} In Appellants' sixth, eighth and tenth assignments of error they take issue with inclusion of the CASA/guardian ad litem's testimony and written reports.

{¶40} Appellants first contend the trial court erred, as a matter of law, in permitting the GAL to testify and in relying on that testimony in making its custody determination when the guardian ad litem was not able to recite all of the factors found in R.C. 3109.04(F)(1).

{¶41} R.C. 3109.04(F)(1) sets forth the factors to be considered by a trial court when making a determination in an original decree allocating the rights and responsibilities of parents, or in modifying the original decree. As earlier discussed,

R.C. 3109.04(E)(1)(a), which governs the modification of a prior order allocating parental rights and responsibilities, applies only to the modification of a final custodial order between two parents of a child, or a parent and a nonparent. It does not apply in temporary custodial proceedings involving two nonparents. However, R.C. 2151.42(A) does require the trial court to consider the best interest of the child. Although that statute does not specifically enumerate factors to be considered, the Ohio Supreme Court has held that the best interest standard is the appropriate standard for the juvenile court to apply in a proceeding modifying custody. *In re Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, at ¶ 38. Therefore, in considering the totality of the circumstances, a trial court does not err in utilizing R.C. 3109.04(F) best interest factors when determining the best interest of the child.

**{¶42}** In the instant matter, the GAL had been appointed early in the proceedings, in July of 2014. The GAL is not an attorney, but a retired educator, and a foundation listing her qualifications was properly before the trial court during her testimony. Appellants do not contest the GAL's general qualifications or abilities. Instead, they claim that because she was unable to recite the statutory factors found in R.C. 3109.04(F) verbatim during her trial testimony, the trial court erred in relying on any part of her testimony. The trial court provided Appellants' counsel with the opportunity to inquire whether the GAL's recommendations aligned with these factors, but Appellants' counsel refused, determined in its position that the GAL be able to recite the language of the statute verbatim. (Tr., p. 962.)

**{¶43}** It is the duty of the guardian ad litem to protect the interests of the child. *In re Pryor,* 86 Ohio App.3d 327, 339, 620 N.E.2d 973 (4th Dist.1993). R.C. 2151.281 governs the duties of a guardian ad litem in juvenile cases. It reads, in pertinent part:

> The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child in accordance with rules adopted by the supreme court.

R.C. 2151.281(I).

**{¶44}** Sup.R. 48 further outlines a guardian ad litem's duties, including those who are not attorneys. It provides in part:

> 5) A non-attorney guardian ad litem must avoid engaging in conduct that constitutes the unauthorized practice of law, be vigilant in performing the guardian ad litem's duties and request that the court appoint legal counsel, or otherwise employ the services of an attorney, to undertake appropriate legal actions on behalf of the guardian ad litem in the case.
>
> * * *
>
> (13) A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed

recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

(a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;

(b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

(c) Ascertain the wishes of the child;

(d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

(e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

(f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

(g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

(h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests

Case No. 17 MA 0169

of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i)  Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

{¶45} As noted by Appellees, there is no requirement that a GAL operate with "legal precision" but, rather, that they adhere to the statutory requirements. *Pryor* at 339.

{¶46} The GAL in the instant matter provided lengthy testimony regarding her years-long investigation of all parties in this action, including several trips to the children's preschool and school, sitting in on visitations with Appellees at Appellants' request and even visiting Appellees' home during one of her personal vacations to Massachusetts.  Her testimony reflected that she had taken several factors into consideration before making her recommendation to the court, many of which encompass the factors enumerated in R.C. 3109.04(F).  She testified that Mother wanted Appellees to have custody.  She testified about the relationship each child had with both parties and their other siblings; the adjustment of the children to their schools; the physical and mental health of the children; and which party was more likely to honor and facilitate visitation.  Appellants' counsel is adamant that the GAL could not fulfill her duties without the ability to recite the statutory factors set forth in R.C. 3109.04(F).  To insist on such a stringent standard imposes demands on a non-attorney guardian ad litem that simply is not required either under the law or within the Rules of Superintendence.  Further, Appellants have not demonstrated that the inability of the GAL to recite the language of the statute has in any way affected her ability to conduct a

thorough investigation of the matter. Appellants' sixth assignment of error is without merit and is overruled.

**{¶47}** In their eighth assignment of error, Appellants contend the trial court erred in allowing the GAL to give hearsay testimony. Appellants cite to four instances in the testimony as evidence of impermissible hearsay, including a statement by Mother to the GAL that Appellants would not allow her to visit with the children. (Tr., p. 911.) Appellants also objected to the GAL's testimony about a statement made by one of the children. On review, the statement cited by Appellants was made to her by one of the children's teachers. (Tr., p. 948.) Appellants take issue with testimony regarding Appellant husband's opinion as to Appellees' sexual orientation. (Tr., pp. 925-927.) Finally, Appellants object to testimony regarding one Appellee's fear that the police were going to be called to their hotel during a visitation period. (Tr., p. 919.)

**{¶48}** A reviewing court will not disturb a trial court's determination on admissibility of evidence absent an abuse of discretion. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. In order to find an abuse of discretion, the reviewing court must find that the trial court's decision was arbitrary, unconscionable or unreasonable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶49}** The testimony regarding Mother's statement on visitation and Appellee's statement regarding the hotel incident are statements made by parties to the action, and the trial court properly overruled Appellants' objection. See Evid.R. 801(D)(2)(a). The testimony from the child's teacher that the child's stubbornness may have contributed to her learning difficulties was not being offered to prove that the child was stubborn, but

only in regard to a number of issues related to the child's learning disabilities. Even if the statement was impermissible, there is no evidence in the record indicating that the trial court relied on this particular testimony in making its determination. Thus, Appellants have demonstrated no prejudice. *In re Vickers Children*, 14 Ohio App.3d 201, 206, 470 N.E.2d 438 (12th Dist.1983). The statement made by the GAL regarding whether Appellant husband had a problem with Appellees' sexual orientation is permissible lay opinion testimony gleaned over the course of her investigation into the hostility exhibited by Appellant husband toward the Appellees. Evid.R. 701; *Hugh v. Wills*, 7th Dist. No. 05 MO 8, 2006-Ohio-1282, ¶ 73.

**{¶50}** Appellants have not cited to any testimony by the guardian ad litem that runs afoul of the evidence rules. Moreover, Appellants have not demonstrated that any of the statements to which they object affected the outcome of the proceedings. The GAL's testimony reflected her investigation over the course of several years in a complicated situation involving several witnesses, and involved inquiry into the needs of the children. Appellants' eighth assignment of error is without merit and is overruled.

**{¶51}** In their tenth assignment of error, Appellants contend the trial court erred in taking judicial notice of the five guardian ad litem reports issued over the course of the proceedings while pending.

**{¶52}** As noted above, R.C. 2151.281(I) requires that the GAL "file other court papers that are in the best interest in accordance with the rules adopted by the supreme court." Sup.R. 48(F) requires that a guardian ad litem "shall prepare a written final report, including recommendations to the court." That report must provide a detailed analysis of all activities undertaken by the GAL including all hearings, interviews,

documents reviewed and experts consulted and is intended to inform the court about how the final recommendation was reached.  *Id.*

**{¶53}** Appellants' attempt to discredit the mandatory reports filed by the GAL, under seal, flies in the face of statute.  The GAL was required to detail her investigation and the activities she undertook in order to reach her recommendation to the court.  The court may consider a guardian ad litem's report even if it contains impermissible hearsay so long as the GAL is available to testify and to be questioned regarding the reports.  *In re C.D.M.,* 4th Dist. No. 13CA1, 2013-Ohio-3792, ¶ 25.  The GAL in the instant matter demonstrated that she conducted a thorough investigation and had generated a number of written reports over the tenure of her investigation.  She was cross-examined by both parties on all issues.  Appellants' tenth assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 7

THE JUVENILE COURT ABUSED ITS DISCRETION BY AWARDING

CUSTODY TO AN OUT OF STATE NON-PARENT THEREBY MAKING

ANY CHANCE OF REUNIFICATION UNLIKELY AND PROBLEMATIC.

**{¶54}** Appellants contend the trial court's decision is detrimental to potential reunification of the children with Mother because Appellees reside outside of Ohio. Appellants' argument fails both legally and factually.

**{¶55}** Once a child is adjudicated abused, neglected or dependent, a juvenile court may award legal custody of the child to any parent or person who files a motion for custody.  R.C. 2151.353(A)(3).  In making a determination on custody, the juvenile court must comply with R.C. 2151.42, which requires a court to conduct a best interest

analysis in making that determination. R.C. 2151.42(A). See *In re Bouska,* 5th Dist. No. 2007AP090063, 2008-Ohio-3277, ¶ 37. An award of legal custody does not divest parents of their residual parental rights, privileges and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17. Parents are generally able to seek a custody modification in the future. *In re L.D.,* 10th Dist. No. 12AP-985, 2013-Ohio-3214, ¶ 7. Hence, while Appellees were granted legal custody of the minor children, Mother retains her parental status and is able to file a motion seeking custody at some future time, contrary to Appellants' assertions. Reunification is not precluded where Mother retains her parental status and her ability to seek custody of her children. Testimony from CSB Executive Director, Randy Muth, indicated that reunification is "the goal." (Tr., p. 513.) The award of legal custody to Appellees does not divest Mother of her parental status nor does it legally preclude potential reunification with Mother should she seek custody at some future date.

{¶56} Appellants' contention the trial court's award of legal custody to Appellees makes reunification "unlikely and problematic" is also not supported by the facts in the record. Mother testified that Appellants allowed her to visit the children when they initially gained custody of them, but that gradually they began to ignore her telephone calls and text messages seeking visitation with her children. (Tr., p. 399.) Moreover, Mother testified that she wanted the children to live with her father. (Tr., p. 404.) The record shows that Mother lived with Appellees for an extended period of time in Massachusetts where she had extended visitation with her other children on a daily basis before her return to Mahoning County shortly before trial in this matter.

{¶57} Appellant wife testified that Mother had weekly visits with the children for the first year Appellants had custody, but that afterward contact diminished and Appellants had no address or working telephone number for Mother. (Tr., pp. 716-717.) Multiple witnesses, including Appellant wife, testified that Appellants referred to themselves as "mommy" and "daddy" with the children. (Tr., pp. 310, 353, 575, 841.) In contrast, Appellants encouraged the children to refer to their Mother as "Mommy Miranda." (Tr., p. 841.) Finally, and most telling, Appellants filed a petition for adoption with the Mahoning County Probate Court and filed a petition for a writ of prohibition with this Court seeking to enjoin the juvenile court from exercising jurisdiction in the custody matter while an adoption petition was pending. These facts seem most troubling when looked at from the view that reunification is the goal. Appellants' seventh assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 9

THE JUVENILE COURT ERRED BY ADJUDICATING THE MERITS OF THIS CASE WITHOUT A NECESSARY PARTY.

{¶58} In their ninth assignment of error Appellants contend that the judgment of the trial court should be reversed, because CSB was never made a party to the action. The matter originated in an abuse, dependency and neglect case arising from a filing by CSB pursuant to R.C. 2151.27. After the shelter care hearing, interim custody was granted to CSB. Once the children were adjudicated abused, dependent and neglected, temporary custody was transferred to Grandmother. At that time, CSB no longer had protective supervision of the children and the matter proceeded in the juvenile court. Temporary custody was transferred from Grandmother to Appellants

pursuant to R.C. 2151.353(A)(2)(d). Subsequent motions for custody were filed by Mother, Appellants and Appellees. CSB was never served as a party in any of those filings because the children were no longer under the protective supervision of CSB. As such, CSB was not a necessary party in this action. Appellants' argument to the contrary is belied by Appellants themselves, because they never attempted service on CSB throughout any of the proceedings or filings below, proceedings which spanned several years. We also note that, as Appellees have legal custody and there has been no termination of parental rights, the juvenile court retains jurisdiction in the matter. Appellant's ninth assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 11

THE JUVENILE COURT ERRED BY FAILING TO FOLLOW THE REQUIREMENTS OF R.C. 2151.353(A)(3).

**{¶59}** Appellants argue the trial court erred in failing to execute a signed statement of understanding and that this failure is indicative of a "systemic failure to follow proper protocol and procedures" by the trial court. (Appellants' Brf., p. 23.)

**{¶60}** R.C. 2151.353(A)(3) allows that the trial court may:

Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of

understanding for legal custody that contains at least the following provisions:

(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

Case No. 17 MA 0169

(d)  That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

**{¶61}**  Appellees contend the statute requires a statement of understanding to be signed prior to the dispositional hearing.  The R.C. 2151.353 dispositional hearing in this matter occurred on March 17, 2014 and resulted in an award of temporary custody to Appellants on April 14, 2014.  The custody order at issue was the product of Appellees' motion to intervene and competing motions seeking legal custody, to which this section does not apply.  Hence, a statement of understanding was not required.

**{¶62}**  More importantly, even assuming the trial court erred in this regard, Appellants failed to preserve this issue for appellate review.  Appellants did not raise an objection to the lack of a statement of understanding by Appellees at the time when the alleged error could have been addressed.  Appellants failed to object during the entire four-year time period in which this matter was pending, and did not object at hearing. See Juv.R. 40(D)(3)(b)(iv).  In failing to raise a timely objection, Appellants waive all but plain error.

**{¶63}**  To establish plain error, Appellants must demonstrate that the trial court's failure to require the proposed legal custodian to submit a written statement of understanding affected, "the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.  Appellants

have failed to show the absence of this statement by Appellees affected "the basic fairness, integrity, or public reputation" of the proceedings. In their brief to this Court, Appellants concede that "standing alone, this may not be significant," and instead suggest that this was the first of many cumulative errors on the part of the trial court.

**{¶64}** There appears to be a lack of consensus among appellate districts as to the interpretation of R.C. 2151.353(A)(3). We have previously held that failure to file a statement of understanding pursuant to R.C. 2151.353(A)(3) is not plain error when the party seeking legal custody has provided testimony at a hearing reflecting their intention to provide a home for the children, and the testimony further demonstrates an understanding of, and commitment to, being the children's legal custodian. *In re D.T.,* 7th Dist. No. 14 JE 29, 2015-Ohio-2333, ¶ 29.

**{¶65}** In the instant matter, Appellees testified extensively regarding their desire to act as legal custodians of the children, and their ability to adjust their work schedules in order to work from home to care for the children. Additionally, they addressed their commitment to maintaining treatments for the children's special needs and ensuring the children maintain a relationship with Mother and extended family members. This testimony clearly demonstrates Appellees' commitment to their roles as legal custodians. Appellants' eleventh assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 4

THE JUVENILE COURT'S RULING "... THAT A SIGNIFICANT CHANGE IN CIRCUMSTANCES OCCURRED SINCE THE MINOR CHILDREN HAVE NOT MADE SIGNIFICANT PROGRESS WHILE IN

[APPELLANTS'] CARE" IS CONTRARY TO AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶66} In their fourth assignment of error, Appellants contend the trial court's determination that a significant change in circumstances occurred in the matter is against the manifest weight of the evidence.

{¶67} The trial court recognized that it was not necessary to demonstrate a change in circumstances occurred in order to grant legal custody of the children to Appellees. *In re Ray,* 7th Dist. Nos. 07 BE 14, 07 BE 15, 2008-Ohio-3250, ¶ 48. However, in its judgment entry the trial court also stated:

Borrowing from Ohio Revised Code Section 3109.04, the Court finds that a significant change in circumstances occurred since the Minor Children have not made significant progress while in [Appellants'] care. Minor Child [J.R.P.] still struggles and is having difficulty in kindergarten. [Appellant wife] noted that the preschool did not adequately prepare [the child] for the transition. It appears that the Minor Children attended the selected preschool due to convenience for [Appellants] and not for the Minor Children's benefit. [Appellants] did not advise the Guardian ad Litem and the Maternal Grandfather and husband about the Minor Children's health needs whereby forcing the Guardian and the Maternal Grandfather and husband to guess and learn on their own. Maternal Grandfather testified that he did not know Minor Child [J.A.P.] required a thickener for his liquids, had ear infections, or therapies. Clearly, [Appellants'] thwarts were not in the Minor Children's best interest. The fact that [Appellants]

Case No. 17 MA 0169

were not forthcoming with the Guardian was also concerning. As an example, the Guardian was never alerted that Minor Child [J.A.P.] was no longer attending preschool at Lockwood.

(11/22/17 J.E., p. 16.)

{¶68} In their brief, Appellants reiterate selected passages from the nearly dozen teachers and counselors who provided testimony about the children's progress and disabilities. Appellants have highlighted testimony favorable to them and disregarded unfavorable testimony. Notably, the record contains testimony from Appellant wife indicating that therapy was allowed to lapse for over a year before being reinstituted, which would certainly support the trial court's finding that a significant change of circumstances had occurred. (Tr., p. 787.)

{¶69} However, as earlier discussed, the trial court was not required to conduct a two-part analysis, first to determine whether there was a change of circumstances, followed by a best interest analysis. Again, we have determined that R.C. 3109.04(E) was not applicable, here. Notwithstanding, the trial court did not err in determining a change of circumstances regarding these children had occurred, as both parties presented testimony from several teachers and counselors indicating that the children had difficulties resulting from the premature birth of J.R.P. and the abuse suffered by J.A.P. at the hands of his Father. The children had attended Easter Seals while under Grandmother's care. Once Appellants were granted temporary custody, the children received therapy only occasionally, and this occurred only at their Head Start program rather than at a more focused therapy program, for the sake of Appellants' convenience. Appellees reinstituted therapy in Massachusetts when they took the children for long-

term visitation over the summer. Appellants only began therapy for the children again shortly before trial. Therefore, although the trial court need not have conducted a change of circumstances analysis, it was not an abuse of discretion to find such a change existed and the finding is supported by the record. Appellants' fourth assignment is without merit and is overruled.

**{¶70}** Based on the foregoing, Appellants' assignments of error are without merit and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Bartlett, J., concurs.

Case No. 17 MA 0169

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**