[Cite as *In re C.B.*, 2011-Ohio-5491.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 92775**

## IN RE: C.B.

## A Minor Child

**JUDGMENT:**
REVERSED, VACATED, AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 06900501

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** October 27, 2011

**ATTORNEYS FOR APPELLANTS**

**Attorney for Mother**

Betty C. Farley
17316 Dorchester Drive
Cleveland, OH   44119

**Attorney for C.B.**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
13770 Ontario Street
Cleveland, OH   44113

**FOR APPELLEE**

**For Father**

A.W., pro se
2720 Wooster Road
Apt. 4
Rocky River, OH   44116

**Also listed:**

**Guardian Ad Litem for Child**

Thomas Kozel
P.O. Box 534
North Olmsted, OH   44070-0534

**Attorneys for Father**

Timothy R. Sterkel
1414 South Green Road
Suite 310
Cleveland, OH   44121

Dale M. Hartman
2195 South Green Road
University Heights, OH 44121

**Attorneys for Cuyahoga County**
**Department of Children and Family Services**

William D. Mason
Cuyahoga County Prosecutor

BY: James M. Price
Assistant Prosecuting Attorney
C.C.D.C.F.S.
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

SEAN C. GALLAGHER, J.:

{¶ 1} This appeal is before this court on remand from the Ohio Supreme Court, after it reversed our determination that the appeal should be dismissed for lack of a final appealable order. *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398.

{¶ 2} Appellant, Mother, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, that granted legal custody of the child, C.B., to Father.[1] The child's guardian ad litem filed a cross-appeal on behalf of the child, challenging the trial court's denial of the motion for permanent custody of the Cuyahoga County Department of Children and Family Services ("CCDCFS") and the award of legal

---

[1] In keeping with this court's established policy of protecting the identity of juveniles, we refer to the child and her family members only by initials or title.

custody to Father.[2]  For the reasons stated herein, we reverse the judgment of the trial court, vacate the trial court's order, and award permanent custody of the child to CCDCFS.

{¶ 3} The child was born on April 16, 2005.  Mother and Father are her biological parents.  They are not married and live separately.  On March 22, 2006, CCDCFS filed a complaint for dependency and temporary custody.  The child was adjudicated dependent, and CCDCFS was granted temporary custody on June 7, 2006.[3]  After more than a year, CCDCFS filed a motion to modify temporary custody to permanent custody on July 27, 2007.  Mother stipulated to the motion, while Father denied the allegations in the motion.  The matter proceeded to a hearing, commencing in October 2008, over two years after the child had been placed in temporary custody of CCDCFS.[4]  Mother again stipulated to a finding of permanent custody for CCDCFS.

{¶ 4} At the hearing, the child's foster mother testified she had been the foster parent for approximately two and one-half years without interruption.  The child was placed in her care at the age of nine months.  The child is healthy with no developmental

---

[2]  Upon motion, separate counsel was appointed to represent the child on appeal.

[3]  "A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents."  *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 24.

[4]  We note that Father objects to the reliance by appellants on testimony elicited at the May 2008 mistrial and on events occurring subsequent to the notice of appeal having been filed.  This court has disregarded such matters.  The facts herein are from the transcripts of the hearing that commenced in October 2008.

delays, attends preschool, and is involved in several activities. There are two other children in the foster family. The child is loved by the foster family and has bonded with them. The foster mother is open to adopting the child.

**{¶ 5}** The foster mother indicated that the child throws temper tantrums before visits with Father, does not want to go, and states she is afraid of him. The foster mother acknowledged that Father brings things for the child and that the child has stated she loves her dad.

**{¶ 6}** Loretha Knight, a social worker for CCDCFS, was assigned to the case in January 2007. She testified that the child was removed from her parents' care on December 23, 2005, after Mother dropped the child off at a police station. The child has been continuously in the custody of CCDCFS since June 2006. Knight stated that the child has adjusted well to foster care and has a very good bond with her foster family.

**{¶ 7}** Though Father took issue with the child's treatment at a hospital during her foster care, the testimony reflected the child was treated for a bad diaper rash or vaginal infection and there was no evidence or findings of any sexual abuse. Knight confirmed an incident in which the child's hair was cut by another child in the foster home. However, she indicated that no violations were issued. She found that the child's basic needs were being provided for in a loving environment.

**{¶ 8}** Knight stated that the child has a good bond with Father and that Father has had both supervised and unsupervised visits with the child. Nevertheless, Knight stated her belief that permanent custody was in the child's best interest.

**{¶ 9}** Knight indicated she was not satisfied with Father's progress on the case plan. The goals of his case plan were emotional stability, including the completion of a psychological assessment with the court diagnostic clinic and obtaining appropriate assistance; obtaining safe, stable, and appropriate housing; obtaining adequate financial resources; and learning parenting skills, including completion of a parenting program. Although Father's apartment appeared to be a suitable environment, his former place of residence was found unsuitable. Further, Father failed to provide requested documentation to establish stability. Father had six or seven jobs from 2006 until the time of the hearing. Knight was not able to verify whether Father had completed parenting education programs.

**{¶ 10}** There was also concern with regard to Father's mental health status. Knight was aware that Mother and Father had met in a mental health facility and that Father had admitted to having been diagnosed with bipolar disorder in the past. However, Father refused to discuss his mental health history and did not provide any further information. Knight learned that Father had been hospitalized for psychiatric reasons, he was diagnosed with certain psychiatric disorders, and follow-up treatment was recommended. The discharge date was December 23, 2003. There is no evidence that Father obtained follow-up care or treatment. Father also had a brother and a parent with a psychiatric condition.

{¶ 11} Father was referred for a psychological evaluation with the court diagnostic clinic, but failed to attend. While Father did complete an evaluation with another provider, there were a number of inadequacies in the report provided.

{¶ 12} It was conceded that Father consistently visits with the child and has missed only two visits in three years. There were case notes indicating visits that went very well and that Father's visits went from two to three hours. There was no concerning behavior on the part of Father noted with regard to visitations. However, Knight testified she had concerns with Father's displays of anger, outbursts, and odd behaviors with several individuals.

{¶ 13} Father's aunt testified she had a strained relationship with him. She testified to concerning behavior of Father, including sleeping on the floor of his grandmother's apartment at night, eating food purchased for his grandmother, living in a house he tore apart, including removing sinks and toilets, and having a dog that he always kept in an attic.

{¶ 14} Dennis Pinciotti, Ph.D., performed a psychological evaluation for Father. Dr. Pinciotti admitted that he does not perform custody evaluations on a routine basis and that they are not his specialty. His evaluation was based solely on information provided by Father, and no collateral sources were consulted. The doctor indicated on cross-examination that he was under the impression from Father that reunification was in progress and that the evaluation was not for a custody recommendation.

{¶ 15} Dr. Pinciotti testified that Father's assessment did not indicate any significant concern. He stated that his experience with a prior diagnosis is "they're like a snapshot at the time unless it's some significant diagnosis[.]" Although he had not seen the hospitalization records at the time he wrote his report, he indicated his opinion would not change. He found that Father had sound parenting ideas, wanted a more stable financial situation, and was willing to take necessary steps to become a better parent. His professional opinion was that Father "does not suffer from any preexisting or current mental health conditions or present any concerns or obstacles that would be of concern or impede his ability to parent his daughter. He also does not appear to be in need of any mental health treatment or services at this time."

{¶ 16} Dr. Pinciotti recommended that unsupervised visitation should continue and should be accelerated to facilitate reunification. He testified that "[Father] would like to see himself as a residential parent after he has established a more satisfactory environment for himself and his daughter. Although he would prefer his daughter not be involved in the foster care system, he is satisfied with her current temporary placement and is realistic about his ability to provide a satisfactory environment for her."

{¶ 17} Father called witnesses to verify that he is employed. Several witnesses testified to Father's visits with the child. Father provided evidence of a month-to-month lease agreement for his housing and a copy of his employee ID badge. He also presented evidence that he had completed a parenting class.

**{¶ 18}** The child's guardian ad litem recommended permanent custody to CCDCFS. He found that the child was very comfortable in her foster home and was informed by the foster mother that she was willing to adopt the child if she became available for adoption. He also found that the child seemed comfortable with Father, that their visits were appropriate, and that Father's apartment appeared suitable.

**{¶ 19}** However, the guardian ad litem was concerned that over two years had passed since the child's placement, the mother had stipulated to permanent custody, he did not believe the child could be reunified with Father now or in the foreseeable future, and he felt the child deserved to be in a stable home. He found that Father was not willing to discuss his prior medical records and had not shown he received the recommended follow-up treatment. He also indicated the mental-health evaluation obtained by Father was based purely on self-reporting of Father, the doctor had not been provided with Father's prior medical documentation, and no collateral sources were consulted. Further, Father never attended his court-ordered evaluation and failed to fully comply with the case plan. There were also reports of bizarre behavior on the part of Father.

**{¶ 20}** On February 1, 2009, the juvenile court denied CCDCFS's motion for permanent custody, ordered CCDCFS's temporary custody to terminate, and granted legal custody to Father.[5] The court further ordered that the child be committed to the

---

[5] In relevant part, R.C. 2151.353(A)(3) allows the court to make the following order of disposition for an abused, neglected, or dependent child: "(3) Award legal custody of the child to either parent or to any other person who, prior to

protective supervision of CCDCFS so that progressive in-home and overnight visitation with Father could be implemented. The court continued the matter to February 27, 2009, for a custody review hearing.

{¶ 21} Mother filed a notice of appeal on February 5, 2009. The child's guardian ad litem timely filed a cross-appeal on March 9, 2009, and also requested the appointment of appellate counsel for the child. This court appointed appellate counsel for the child. We also appointed counsel for Father. The lower court proceedings were stayed.

{¶ 22} After appellate briefs were filed, this court dismissed the case for a lack of a final appealable order. That ruling was reversed by the Ohio Supreme Court, and the cause was remanded to this court for further proceedings. *In re C.B.*, 129 Ohio St.3d 231, at ¶ 19. The matter, which has been fully briefed, is now before us for review.

{¶ 23} Initially, we address jurisdictional and standing issues that have been raised. Pursuant to *In re C.B.*, at ¶ 15, "when a trial court denies a children-services agency's motion to modify temporary custody to permanent custody, terminates the placement of temporary custody with the agency, and awards legal custody to a parent, the order is final and appealable under R.C. 2505.02." Thus, we have jurisdiction to consider the appeal.

{¶ 24} However, Father challenges Mother's standing to appeal. CCDCFS did not appeal the trial court's order denying permanent custody and terminating the child's

the dispositional hearing, files a motion requesting legal custody of the child * * *."

placement in its temporary custody. Mother, who stipulated to an award of permanent custody to CCDCFS, made no concession to an award of legal custody to Father.[6]

{¶ 25} The child's natural parents are parties to the proceedings. R.C. 2151.352; Juv.R. 2(Y). "An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." *In re Smith* (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45. As the trial court's order failed to award permanency for the child and granted legal custody to Father, Mother's rights were clearly impacted. Thus, Mother has standing to challenge whether the decision was proper.

{¶ 26} The child's guardian ad litem filed a cross-appeal on behalf of the child, and appellate counsel was appointed for the child.[7] Pursuant to R.C. 2151.352 "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, syllabus.

{¶ 27} The assignments of error raised by Mother and the child challenge the trial court's ruling as being an abuse of discretion and against the manifest weight of the evidence. We find merit to the arguments raised.

---

[6] We note that Father never formally requested legal custody of the child.

[7] Though the notice of cross-appeal was filed by the guardian ad litem, he contemporaneously filed a motion for the appointment of counsel to represent the child in the cross-appeal.

{¶ 28} It is well established that the right to parent one's children is a fundamental right. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. Nevertheless, a government agency has broad authority to intervene when necessary for the child's welfare or in the interests of public safety. Id. at ¶ 28-29, citing R.C. 2151.01(A). In accordance with R.C. 2151.414, a trial court may grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d) applies and that an award of permanent custody is in the child's best interest. Id. at ¶ 23. "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 364, 120 N.E.2d 118.

{¶ 29} The factors under R.C. 2151.414(B)(1) include the following: (a) the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent; (b) the child is abandoned; (c) the child is orphaned and no relatives are able to take permanent custody of the child; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period.

{¶ 30} Here, the record supports the trial court's determination that the child had been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period. In fact, the child had been in continuous custody for over two years at the time the hearing was held. In this regard, we echo the concern expressed by Justice

McGee Brown: "In the event that a court removes a child from a parent because of abuse or neglect, the parent faces court orders to remedy the conditions causing the child's removal. If a parent fails within 12 months to remedy these problems or to make substantial progress toward their remediation, the child is entitled to a permanency determination. R.C. 2151.413(D)(1) and 2151.414(A)(1), (A)(2), and (E)(1). It is paramount that juvenile courts stick to these time parameters for the best interest of the child." *In re C.B.*, 129 Ohio St.3d 231, at ¶ 21, McGee Brown, J., concurring. We caution juvenile courts that they must avoid delay in custody determinations and are to expeditiously move to a speedy resolution in abuse, neglect, or dependency cases. See id. at ¶ 23-24.

{¶ 31} Having satisfied R.C. 2151.414(B)(1)(d), the only other finding the court was required to make was that an award of permanent custody is in the best interest of the child. See *In re D.A.*, Cuyahoga App. No. 95188, 2010-Ohio-5618.

{¶ 32} R.C. 2151.414(D) sets forth the relevant factors a court must consider in determining the best interest of the child. These factors include, but are not limited to the following: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, and foster caregivers; (2) the child's wishes expressed directly or through a guardian ad litem; (3) the child's custodial history; (4) the child's need for legally secure permanent placement and if that type of placement can be obtained without granting permanent custody to the agency; and (5) whether any factors listed in R.C. 2151.414(E)(7)-(11) apply. See R.C. 2151.414(D)(1)-(5).

**{¶ 33}** "In Ohio, it is axiomatic that the best interest determination focuses on the child, not the parent. R.C. 2151.414(C) expressly prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents." *In re D.A.*, 2010-Ohio-5618, at ¶ 51. In this case, the trial court found that there was a lack of clear and convincing evidence that an award of permanent custody was in the best interest of the child. Much of the court's opinion was focused upon Father, who the court found had not abandoned the child and had demonstrated a commitment toward the child. The court further found there was insufficient evidence to support the allegations that Father had a chronic mental or emotional illness that made him unable to provide an adequate or permanent home for the child. The court determined that legal custody should be awarded to Father. We find that the trial court abused its discretion and that the trial court's determination was against the manifest weight of the evidence.

**{¶ 34}** The record reflects that the child has a good relationship with both her foster family and Father. However, "the mere existence of a good relationship is insufficient. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship." (Citations and quotation omitted.) Id. at ¶ 61. While the child's visits with Father were appropriate, there was evidence that the child often throws tantrums beforehand or does not want to go. Further, the child has bonded with her foster family. She has been continuously in the same foster home for several years, since she was a baby, and the foster mother has expressed a willingness to adopt the child.

**{¶ 35}** The guardian ad litem recommended permanent custody of the young child to CCDCFS. He indicated that the case plan has not been complied with, the child has been in the custody of CCDCFS for over two years, there is concern over Father's mental health history, and the child has bonded with her foster family and deserves a stable home.

**{¶ 36}** We recognize that Father was not the cause for removal of the child. The record reflects that Father and the child love each other and have a good relationship. Father's visitation with the child has been consistent and appropriate. Further, Father obtained suitable month-to-month housing, was employed, and had taken a parenting class.

**{¶ 37}** Although Father has shown a strong desire to parent the child and has made efforts to prepare for such a role, our primary inquiry remains the best interest and welfare of the child. As Ohio courts have recognized, "'[P]arents who are *suitable* persons have a "paramount" right to the custody of their minor children.' *In re Murray* (1990), 52 Ohio St.3d 155, 157 (citations omitted). 'The fundamental interest of parents is not absolute, however.' *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, at ¶ 11. The 'extreme disposition' of permanently terminating a parent's rights with respect to a child 'is nevertheless expressly sanctioned * * * when it is necessary for the "welfare" of the child.' *In re Cunningham* (1979), 59 Ohio St.2d 100, 105. '[T]he *fundamental* or *primary* inquiry at the dispositional phase of these juvenile proceedings is not whether the parents of a previously adjudicated "dependent" child are either fit or unfit,' rather, it is

'the best interests and welfare of that child [that] are of paramount importance.'  Id. at 106 (emphasis sic)."  *In re S.P.*, Lake App. Nos. 2011-L-038 and 2011-L-039, 2011-Ohio-4696, ¶ 35.

{¶ 38} The record here reflects that Father did not comply with the case plan and exhibited a lack of stability.  There was testimony showing a history of unstable housing and prior unsatisfactory conditions.  He also had numerous employers over the past several years.  Additionally, he failed to attend the court-ordered psychological evaluation, despite his mental condition having been in question.  There was evidence that Father and Mother met in a mental health facility, and that Father was hospitalized for psychiatric reasons and was diagnosed with certain psychiatric conditions.  Although Father argues his hospitalization was years ago, he was unwilling to discuss his mental-health history, there was no evidence that he obtained the recommended follow-up treatment, and he has exhibited other concerning behavior.  While Father obtained an outside report, the evaluation was based purely on self-reporting by Father, the doctor had not been provided with pertinent information regarding Father's mental-health and family history, and certain tests were not performed.  The evidence reflects that the goals of the case plan were not substantially adhered to or met.

{¶ 39} As was the case in *In re D.A.*, although the court orders and case plan were not complied with, the trial court still granted Father legal custody, further delaying permanence for the child.  "A permanent, loving family and a safe and stable home are clearly in [the child's] best interest.  Although the trial court's repeated attempts to place

child with father may have been well-intentioned, it placed the father's interest ahead of the child's, in violation of the Revised Code and the relevant case law[.]" *In re D.A.*, 2010-Ohio-5618, at ¶ 62.

{¶ 40} Regrettably, despite Father's love and devotion to the child, an award of legal custody is not in her best interest or welfare. As this court has repeatedly recognized, "'[a] child's best interests require permanency and a safe and secure environment.'" *In re S.W.E.*, Cuyahoga App. No. 91057, 2008-Ohio-4234, ¶ 11, quoting *In re Holyak* (July 12, 2001), Cuyahoga App. No. 78890.

{¶ 41} Upon our review, we find that a multitude of factors under R.C. 2151.414(D) were established by clear and convincing evidence. The trial court abused its discretion in finding it was not in the child's best interest to award permanent custody to CCDCFS and in awarding Father legal custody. We further find that its decision to deny the motion for permanent custody of CCDCFS was against the manifest weight of the evidence.

{¶ 42} Accordingly, the trial court's judgment is reversed, the February 1, 2009 order is vacated, and permanent custody of the child is granted to CCDCFS. The case is remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR