[Cite as *In re E.E.*, 2021-Ohio-2770.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE E.E., ET AL.

Minor Children

[Appeal by S.A., Mother]

:
:
:
:
:

No. 110021

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

**RELEASED AND JOURNALIZED:** August 12, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-19-915293 and AD-19-915294

---

*Appearances:*

Patituce & Associates, L.L.C., Joseph C. Patituce and Catherine R. Meehan*, for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young and Cheryl A. Rice, Assistant Prosecuting Attorneys, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-Mother, S.A. ("Mother"), appeals from the judgment of the juvenile court adjudicating her children E.E. (d.o.b. 01/04/2006) neglected and abused, and D.A. (d.o.b. 12/19/2009) dependent. Additionally, Mother appeals the grant of temporary custody of her children to the Cuyahoga County Division of

Children and Family Services ("CCDCFS" or "agency"). For the reasons set forth below, we affirm in part, reverse in part, and remand the decision of the juvenile court.

**Facts and Procedural History**

{¶ 2} On or about November 18, 2019, E.E. reported to Mother that she had been sexually assaulted on two separate occasions by her stepfather, M.A. M.A. is the biological father of E.E.'s sister, D.A. E.E. reported that the first assault happened in March 2019, when she alleged that M.A. put his fingers inside her vagina. The second time occurred in July 2019 when she alleged that M.A. put his penis into her anus.

{¶ 3} On learning of the allegations, Mother removed M.A. from the home, contacted the police, filed a police report, and took E.E. to Fairview Hospital. A sexual assault nurse examiner advised Mother that E.E. would need to be examined at the Alpha Clinic since the alleged assault occurred more than 72 hours before the date of her appointment.

{¶ 4} Mother arranged for an appointment at the Alpha Clinic for December 5, 2019. E.E. was examined by Dr. Joshua Friedman ("Dr. Friedman") who reported to Mother that based on his exam, he found no evidence that either refuted E.E.'s allegations or supported them. He also explained to Mother that his findings were not unusual and that it was rare for there to be physical evidence of sexual abuse for many reasons, such as, the length of time that the incidents occurred and the possibility of healing.

{¶ 5} Deyona Cecil ("Cecil"), a social worker from CCDCFS was assigned to the case on November 22, 2019. The agency suggested that E.E. receive a mental health assessment and therapeutic support. Mother expressed to Cecil that she did not believe E.E.'s allegations. According to Cecil, Mother took Dr. Friedman's report as proof that the allegations were false. On December 18, 2019, Cecil visited the home. At that time, Mother asked Cecil whether M.A. could return to the home. Cecil told Mother that that was Mother's decision. Mother allowed M.A. to return to the home that same date.

{¶ 6} CCDCFS scheduled a staffing the following day on December 19, 2019, to discuss the safety of the children. Mother participated by phone. During the staffing, according to Cecil, Mother expressed that she was staying with her husband and the agency could remove E.E. from the home, if necessary. When the agency indicated they would remove the children from the home, due to the safety risk, Mother agreed to remove M.A. from the home a second time.

{¶ 7} On December 20, 2019, CCDCFS filed a complaint and motion for predispositional temporary custody alleging E.E. was abused and that both E.E. and D.A. were neglected. In the complaint, CCDCFS alleged the following:

E.E. was the victim of sexual abuse by M.A. and that there was a pending criminal investigation into the abuse.

On or about December 18, 2019, Mother allowed M.A. to return to the home.

Mother lacked appropriate judgment with which to care for the children. Mother minimizes the sexual abuse of E.E. and asked for E.E.'s removal from the home.

Mother failed to ensure that E.E. received mental health services on a consistent basis.

Father of E.E., J.E., is not involved in her life.

Father J.E., has another child who was adjudicated neglected and dependent, due in part to J.E.'s failure to support, visit, and communicate with the child. That child was found abandoned by father and committed to the permanent custody of the Agency.

{¶ 8} As a result of the hearing on the matter, the juvenile court denied the request for predispositional temporary custody, finding that CCDCFS did not make reasonable efforts to prevent removal. The juvenile court determined that there was no probable cause to warrant removal of the children from Mother, but there was probable cause to warrant removal of the children from M.A.

{¶ 9} The juvenile court ordered that the children were to remain in the custody of Mother with protective supervision to the agency. M.A. was ordered not to return to the home of Mother, pending further order of the juvenile court. The juvenile court also placed a no-contact order between E.E. and M.A., ordered weekly home visits by the agency, and ordered supervised visitation between M.A. and D.A.

{¶ 10} After a pretrial hearing, on January 16, 2020, a magistrate modified the order, changing home visits from weekly to biweekly, with a notation to increase visits if the agency deemed it necessary and expanded the no-contact order to include D.A.

{¶ 11} M.A. filed an objection to this decision, which was overruled by the court. Additionally, the court ordered CCDCFS to notify the court by motion, if access to where the child is placed is denied or if the child's mother is not cooperating with the agency, or if Mother is not returning telephone calls to the agency.

{¶ 12} The guardian ad litem ("GAL") for the children, Patrick Lavelle ("Lavelle"), filed a report on January 31, 2020. He reported that Mother refused to speak to him about E.E.'s allegations against M.A. Mother advised the GAL to speak to her lawyer. Mother did provide some background information about a previous allegation E.E. made against a student at school.[1] The GAL's report indicated that those allegations proved to be false.[2]

{¶ 13} The GAL did not speak to E.E. about the details of the allegations against M.A., thinking that it would be better for the investigators and those with expertise to address those issues with her. The GAL did speak further with Mother and it was his impression that Mother did not believe E.E.'s allegations. However, he did believe that Mother would abide by the juvenile court's order and keep M.A. out of the home. The GAL spoke to Mother about her decision to bring M.A. back into the home and Mother informed him that she had spoken to a social worker and a police officer about this decision. Noting that this event occurred before a formal

---

[1] In a subsequent report, the GAL indicated the allegation was made against a foster child in the family home. This issue was not fully addressed in the record.

[2] It is unclear from the record whether the GAL determined this allegation was false by his own investigation or whether he was simply reporting what Mother reported to him.

case had been filed, he believed that the decision, while not prudent, was not purposely done to expose E.E. to a known danger. The GAL recommended that temporary custody be denied. He also recommended that M.A. be excluded from the home and that he be denied visitation until a formal investigation is completed.

{¶ 14} On February 13, 2020, CCDCFS filed a notice apprising the juvenile court that Mother had failed to agree to schedule an interview with the children at the Child Advocacy Center. A contempt hearing was held on February 24, 2020, at which the newly assigned social worker, Sally McHugh ("McHugh"), indicated that there were no safety concerns in the home and that the basic needs of the children were being met. The juvenile court held its decision on the motion to show cause in abeyance.

{¶ 15} On March 9, 2020, the GAL filed a motion for an in camera interview of E.E. arguing that Mother had refused to allow the child to be interviewed and that E.E. was mature enough to express herself and assist the court in its proceedings. Also, on March 9, 2020, M.A. filed a motion to dismiss the complaint and to dismiss the contempt allegation, arguing that Mother had fully cooperated and that the agency's order to cooperate was vague.

{¶ 16} An adjudicatory hearing was held on that same day. During that hearing, Dr. Friedman and McHugh testified. Dr. Friedman testified as to his examination of E.E., and he indicated that it was his policy not to discuss the sexual assault allegations with the patient. Rather, his goal was to gather sufficient

information about what was alleged to have happened to determine what physical exams were necessary and what treatment, if any, was required.

{¶ 17} McHugh testified as to the information in the case file about the agency's initial interactions with the family, E.E.'s report of abuse, and the events that led up to the agency filing for temporary custody.

{¶ 18} After completion of the testimony, the case was continued until March 13, 2020, so that the GAL and counsel for E.E. could meet with the child. Counsel for E.E. reported that she was unable to meet with her client because she did not receive timely notification from Mother. Specifically, Mother called assigned counsel and notified her that she could meet with E.E. within the hour.

{¶ 19} The GAL filed a supplemental GAL report on March 12, 2020. He reported that on March 10, 2020, Mother denied him the opportunity to meet with E.E. Specifically, the GAL contacted Mother to arrange an interview with E.E., but Mother told him she wanted to talk to her attorney first. He further indicated that, since the writing of the report, Mother had not followed up to arrange an interview. With respect to the allegations, the GAL noted:

> At the present time, the undersigned cannot determine with certainty whether a sexual assault occurred or not. The undersigned had planned on relying on the interview of the trained professionals. Since this has not occurred and the mother is refusing contact between GAL and his ward, the undersigned is forced to conclude that the mother is purposely silencing her daughter and not giving her a voice in regards to proceedings that involve her. The mother has presented a joint defense with M.A. The mother's joint defense includes silencing her daughter and not giving her a voice. The mother has attacked the credibility of her own daughter. The mother has basically called her daughter a lier [sic] in open court. In silencing her daughter, the

mother is actively protecting a person that has been accused of raping her daughter. In short, whether or not the allegations in this matter prove to be true, the mother [sic] behavior during the pendency of this case has been reprehensible.

{¶ 20} Noting that he had previously supported the children remaining in the home, the GAL indicated that circumstances had changed. Arguing that part of protecting the child included cooperating with law enforcement investigations and noting Mother's refusal to do so, the GAL recommended that temporary custody to CCDCFS be granted as to E.E. In regards to D.A., he recommended that she remain in the home with continued protective supervision.

{¶ 21} On March 12, 2020, Mother filed a motion to limit E.E.'s in camera interview to what was in her best interest as to custody, "rather than a full investigation into the allegations of sexual abuse." The motion noted that Mother was aware that CCDCFS wanted to conduct a subsequent investigative interview with E.E. and that such an interview was against Mother's wishes. The motion then concluded by arguing that E.E. should not be required to "continuously relive" the allegations and that it would be in the best interest of her physical and mental well-being to not have to discuss these issues.

{¶ 22} The GAL indicated that he was able to meet with E.E. sometime after filing his report. However, before Mother left the room, she told E.E. four times that E.E. was not required to talk to the GAL. As a result, the GAL was unable to have a productive conversation with E.E.

{¶ 23} On March 13, 2020, the juvenile court conducted an in camera interview with E.E. During that conversation, E.E. recanted the allegations. The juvenile court subsequently issued its decision that adjudicated E.E. an abused and neglected child and D.A. a dependent child. The juvenile court continued to hold the motion to show cause in abeyance. On May 14, 2020, Mother filed an objection to the magistrate's decision under E.E.'s case number, which was subsequently overruled. While Mother did not file a similar motion under D.A.'s case number, she argued that the juvenile court erred with respect to its findings as to both children.

{¶ 24} The dispositional hearing was held on July 6, 2020. During the hearing, McHugh testified that, except for the first visit, she was not allowed to speak to E.E. or D.A. without Mother being present in the room. Also, Mother continued to refuse to allow a forensic interview of E.E. McHugh further testified that she had received a release of information from Mother prior to the hearing. Mother had reported to McHugh that E.E. was seeing a new counselor. Otherwise, McHugh reported that the home was appropriately clean and well kept. McHugh's biggest concern was that Mother failed to believe E.E.

{¶ 25} The GAL reported that he had met with E.E. several times; however, Mother continued to block him from having effective communication with E.E. He recommended temporary custody for E.E., but not D.A. The GAL indicated that he thought E.E. would not receive any meaningful help until she was removed from the home. The GAL expressed concern that E.E. had reported the rape to her mother,

the police, and her social worker, Cecil, and yet, Mother still refused to believe it had occurred. The GAL also believed that Mother would not address the alleged abuse and would sweep things under the rug unless temporary custody was granted.

{¶ 26} Subsequently, the magistrate issued an order granting temporary custody of both children to CCDCFS. Mother again filed an objection to the decision under E.E.'s case number only, but objected as to both E.E. and D.A. The juvenile court overruled the objections. The juvenile court adopted the magistrate's decision and ordered it into effect. Mother filed a motion to vacate and stay in relation to the decision and dispositional orders to allow preparation and review of the transcript, which motion was granted by the juvenile court. Once the transcript was prepared and available for review, the juvenile court again overruled the objection and ordered the dispositional judgments of temporary custody into effect.

{¶ 27} Mother now appeals, assigning the following errors for review:

**Assignment of Error No. 1**
The trial court erred in adjudicating E.E. abused and neglected, and D.A. dependent.

**Assignment of Error No. 2**
The trial court abused its discretion in failing to dismiss the complaint and granting temporary custody to the agency.

**Assignment of Error No. 3**
The trial court erred by permitting hearsay testimony from the subsequent caseworker.

**Assignment of Error No. 4**
The trial court lacked jurisdiction to adjudicate D.A. a dependent child.

{¶ 28} For ease of discussion, we will address the assignments of error out of order as necessary.

{¶ 29} In the first assignment of error, Mother argues that the juvenile court erred in adjudicating E.E. abused and neglected, and in adjudicating D.A. dependent.

{¶ 30} Whether a child is an abused, neglected, or dependent child must be proven by clear and convincing evidence. R.C. 2151.35(A), Juv.R. 29(E)(4) (during the adjudicatory hearing "the court shall determine the issue * * * by clear and convincing evidence in dependency, neglect and abuse actions"). *See In re Vinci*, 8th Dist. Cuyahoga No. 73043, 1998 Ohio App. LEXIS 4100, at 7 (Sept. 3, 1998); *In re Hauserman*, 8th Dist. Cuyahoga Nos. 77235 and 77252, 2002-Ohio-1094, and *In re A.C.,* 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933, ¶ 40. Clear and convincing evidence is "that measure or degree of proof which is more than a mere preponderance of the evidence, but does not reach the extent of the certainty required to establish beyond a reasonable doubt in criminal cases." *Id.* "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *In re C.B.*, 8th Dist. Cuyahoga No. 92775, 2011-Ohio-5491, ¶ 28, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 31} In order to determine whether a trial court's judgment is based on clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the

requisite degree of proof." *In re C.O.,* 8th Dist. Cuyahoga Nos. 99334 and 99335, 2013-Ohio-5239, ¶ 30, quoting *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). "If the trial court's judgment is 'supported by some competent, credible evidence going to all the essential elements of the case,' a reviewing court may not reverse that judgment." *Id.*

**Abuse of E.E.**

{¶ 32} In the instant case, Mother argues that the record did not contain competent, credible evidence to support the finding that E.E. was abused. Mother argues that while E.E. disclosed the rape to her, it is unclear what E.E. told Cecil because Cecil did not testify. Further, Mother argues that Dr. Friedman did not interview E.E. and only received information from Mother as to what happened. Finally, Mother argues that there were no physical findings of sexual abuse, calling into question E.E.'s credibility, and notes that E.E. recanted her allegations. Based on the above, Mother argues that competent and credible evidence did not support the trial court's finding of abuse.

{¶ 33} R.C. 2151.031 defines an "abused child" to include any child who:

(A) Is the victim of "sexual activity" as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child;

(B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child.

{¶ 34} Here, M.A. was alleged to have engaged in sexual activity with E.E. Under R.C. 2151.031(A) and Chapter 2907, specifically, R.C. 2907.01, "sexual activity" means "sexual conduct" or "sexual contact" or both. R.C. 2907.01(C). M.A.'s alleged conduct of putting his finger(s) into E.E.'s vagina, and his penis into her anus constituted "sexual conduct" under R.C. 2907.01(A) which includes "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another" without privilege to do so. The testimony regarding E.E.'s assault, as reported by E.E. to Mother, Cecil, the police, and her therapist supported the juvenile court's finding of abuse. There was competent and credible evidence to support the juvenile court's finding that E.E. was an abused child under R.C. 2151.031(A).

{¶ 35} Further, under R.C. 2151.031(B), a child is abused when, under R.C. 2919.22, a parent creates a substantial risk to a child's health or safety by violating a duty of care or support, or abusing a child. Due to M.A.'s alleged sexual assault against E.E., she was endangered. Therefore, there was competent and credible evidence to support the juvenile court's finding that E.E. was an abused child under R.C. 2151.031(B).

{¶ 36} Thus, the juvenile's court's finding that E.E. was an abused child was supported by clear and convincing evidence.

**Neglect of E.E.**

{¶ 37} Within this assignment of error, Mother argues that because E.E. was in counseling at the time of the adjudication hearing, there was insufficient evidence

of neglect.  Further, Mother argues that although she did tell the agency to take E.E., she thought it was her only option.  Finally, Mother argues doubting E.E.'s allegations was reasonable, because E.E. previously made unsubstantiated allegations of sexual abuse against another party.

{¶ 38} We are not persuaded by Mother's arguments here.

{¶ 39} Under R.C. 2151.03(A), a "neglected child" is defined as any child:

(2)  Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;

(3)  Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health morals, or well-being;

{¶ 40} "Adequate parental care" as used in the neglect statute means "the provision by a child's parent or parents, guardian, or custodian of adequate food, clothing, and shelter to ensure the child's health and physical safety and the provision by a child's parent or parents of specialized services warranted by the child's physical or mental needs."  R.C. 2151.011(B)(1); *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 14.

{¶ 41} "To determine whether a child is neglected or dependent, the date on which neglect or dependency 'existed must be alleged in the complaint and the trial court must determine that the circumstance(s) which support a finding of dependency [or neglect] existed as of the date or dates alleged in the complaint.'"  *In re C.O.*, 8th Dist. Cuyahoga Nos. 99334 and 99335, 2013-Ohio-5239, ¶ 31, citing *In re Barnhart*, 4th Dist. Athens No. 02CA20, 2002-Ohio-6023, ¶ 35, citing *In re*

*Rowland*, 2d Dist. Montgomery N0. 18429, 2001 Ohio App. LEXIS 462 (Feb. 9, 2001).  Therefore, the relevant period at issue is December 19, 2019, the date the complaint alleged E.E. was neglected.

**{¶ 42}** Here in the instant case, the agency alleged that Mother lacked appropriate judgment to care for the children because she minimized the alleged sexual abuse, allowed M.A. to return to the home, while a criminal investigation was pending, and asked the agency to remove E.E. from her home.  They also alleged that Mother failed to ensure that E.E. received mental health services on a consistent basis.

**{¶ 43}** Relative to E.E.'s counseling, McHugh testified that E.E. had been referred to a counselor due to a previous allegation of sexual abuse she made against a different person.  E.E. went to counseling for a time, however at the time the complaint was filed, E.E. was not in counseling because the therapist stopped coming to the school and Mother had not established counseling with anyone else.

**{¶ 44}** While we recognize that Mother is not required to cooperate with the agency, however, where Mother refuses to allow CCDCFS to conduct a forensic interview with the child, refuses to allow the social worker or GAL to have meaningful conversation with the child, and actively interferes with free communication between the child, her representatives and the court, the juvenile court may make negative inferences from those facts.  *See In re M.W.*, 12th Dist. Warren Nos. CA2020-03-018 and CA2020-03-019, 2021-Ohio-1129.

{¶ 45} Based on the foregoing, there was competent, credible evidence in the record to support the juvenile court's finding of neglect. Mother's first assignment of error is overruled as to E.E.

**Dependency of D.A.**

{¶ 46} Within this assignment of error, Mother argues that there was no evidence presented as to D.A. and that the complaint did not allege that D.A. was dependent. Mother argued further that there was no testimony presented to support an allegation that D.A. was dependent under either R.C. 2151.04(D)(1) and (D)(2). Mother argued that while R.C. 2151.04(D)(2) might apply, there was no testimony that M.A. was a danger to D.A.

{¶ 47} As a preliminary matter, we note that the juvenile court's journal entry did not comply with the requirements of R.C. 2151.28(L) which states:

> If the court, at an adjudicatory hearing held pursuant to division (A) of this section upon a complaint alleging that a child is an abused, neglected, dependent, delinquent, or unruly child or a juvenile traffic offender, determines that the child is a dependent child, the court *shall* incorporate that determination into written findings of fact and conclusions of law and enter those findings of fact and conclusions of law in the record of the case. The court *shall* include in those findings of fact and conclusions of law specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child.

(Emphasis added.)

{¶ 48} The juvenile court's entry in this case stated, "[t]he court finds upon the testimony heard, that a danger to the child exists. The child is adjudicated dependent." This court has previously reversed a decision of the juvenile court, in

part, because of a failure to comply with R.C. 2151.28(L). *In re E.Z.*, 8th Dist. Cuyahoga Nos. 103728 and 103966, 2016-Ohio-5412 (reversed and remanded as state failed to present sufficient evidence to prove dependency and for compliance with R.C. 2151.28(L)). We noted that where a court's decision is "devoid of any specific findings as to either the existence of any danger to the child or any underlying family problems that are the basis for the court's determination that the children are dependent" the court's findings of facts and conclusions of law fail to meet the requirements of R.C. 2151.28(L). *Id.* at ¶ 22.

{¶ 49} Further, "[b]road, general statements of fact, which might be adequate in a complaint alleging a child to be a dependent child, do not meet the specificity requirements of R.C. 2151.28(L)." *In re T.C.*, 9th Dist. Wayne Nos. 18AP0021 and 18AP0022, 2018-Ohio-4369, ¶ 11, citing *In re S.W.*, 12th Dist. Butler Nos. CA2006-09-211 and CA2006-10-263, 2008-Ohio-1194, ¶ 11. The entry should be sufficiently specific to allow a reviewing court to "determine what facts the court found relevant in determining [the child] was dependent, what facts the conclusions of law were based upon, and what specific conclusions of law were made." *Id.* at *id.* at ¶ 12.

{¶ 50} Here the juvenile court only stated the conclusion that D.A. was in danger without any reference to what facts the juvenile court found relevant in its determination that D.A. was dependent, or what facts the conclusions of law were based upon. Therefore, the juvenile court has failed to comply with R.C. 2151.28(L).

{¶ 51} A number of courts have found that where a juvenile court has failed to comply with R.C. 2151.28(L) as to the finding of dependency, that portion of the case must be remanded for correction of the entry. *In re S.L.*, 2016-Ohio-5000, 56 N.E.3d 1026, ¶ 9 (3d Dist.) (case affirmed in part and reversed in part and remanded for trial court to make written findings of fact and conclusion of law in compliance with R.C. 2151.28(L)); *In re A.B.C.*, 5th Dist. Stark No. 2010CA00087, 2011-Ohio-531, ¶ 28 (where entry merely stated "by clear and convincing evidence [child] is dependent in that his condition or environment is such to warrant the State, in the best interest of the child to assume guardianship," case remanded for trial court to include required dependency findings under R.C. 2151.28(L), all other assignments which were based on finding of dependency rendered premature); *In re B.S.*, 4th Dist. Highland No. 19CA10, 2019-Ohio-3481, ¶ 8 (court of appeals refused to hear Father's appeal of finding of dependency until juvenile court issued findings of fact and conclusions of law in conformity with R.C. 2151.28(L)); *see also In re J.R.P.*, 2018-Ohio-3938, 120 N.E.3d 83, ¶ 21 (7th Dist.), acknowledging requirements of R.C. 2151.28(L).

{¶ 52} Because the juvenile court did not comply with R.C. 2151.28(L), by failing to make the necessary findings of fact, we remand for compliance with R.C. 2151.28(L). Accordingly, we overrule in part and sustain in part, the first assignment of error.

{¶ 53} We now turn to the third assignment of error, wherein Mother argues that it was error to have allowed McHugh to testify about the contents of the case file that predated her assignment to the case.

{¶ 54} Preliminarily, we note, this court has previously noted that "[t]he rules of evidence strictly apply to adjudicatory hearings." *In re E.Z.*, 8th Dist. Cuyahoga Nos. 103728 and 103966, 2016-Ohio-5412, ¶ 18, citing *In re O.H.*, 9th Dist. Summit No. 24761, 2011-Ohio-5632, ¶21, citing *In re Baby Girl Baxter*, 17 Ohio St.3d 229 at 223, 479 N.E.2d 257. Further, it is well established that a social worker may testify to the contents of the case file, provided a foundation is laid to establish that the testimony is either a business record under Evid.R. 803(6) or a public record under Evid.R. 803(8). *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 72.

{¶ 55} To qualify under the public records exception, the records must "set forth the activities of an agency or office and contain matters observed which, pursuant to a duty of law, i.e., R.C. 5153.17, the agency has a duty to report." *J.T.* at *id.* We have previously held that it is not error where the record reflects that the testifying social worker is assigned to the case and "reviewed the case file and specifically relied on its contents when answering questions related to the history of the case." *Id.*

{¶ 56} Here there was testimony that McHugh was employed by CCDCFS as a social worker and assigned to the case in that capacity, had reviewed the case file

in order to do her duties, and was testifying about the case file before the juvenile court. It was not error to admit that testimony.

{¶ 57} Accordingly, we overrule Mother's third assignment of error.

{¶ 58} In her fourth assignment of error, Mother argues that the trial court lacked jurisdiction to adjudicate D.A. dependent. Mother argues that the complaint did not allege dependency, and additionally, that there were no facts listed in the complaint alleging dependency. Therefore, she argues the court did not have jurisdiction over D.A. We disagree.

{¶ 59} As a preliminary matter, we note that Mother did not raise this issue in her objection to the magistrate's decision. While she argued that there was insufficient evidence to support the finding of dependency and that the complaint did not put her on notice that dependency was at issue, Mother did not challenge the jurisdiction of the juvenile court. "Failure to object to a magistrate's decision waives all but plain error on appeal." *In re T.E.*, 8th Dist. Cuyahoga No. 104228, 2016-Ohio-5935, ¶ 37, citing *In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 24.

> [T]he plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Id.*, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

**{¶ 60}** This is not that case. Mother has not claimed plain error, and upon review of the record, we find no plain error in the juvenile court's exercise of jurisdiction.

**{¶ 61}** R.C. 2151.27(A)(1) states, in pertinent part:

Subject to division (A)(2) of this section, any person having knowledge of a child who appears * * * to be an unruly, abused, neglected, or dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the violation, unruliness, abuse, neglect, or dependency allegedly occurred. * * *

The sworn complaint may be upon information and belief, and, in addition to the allegation that the child committed the violation or is an unruly, abused, neglected, or dependent child, the complaint shall allege the particular facts upon which the allegation that the child committed the violation or is an unruly, abused, neglected, or dependent child is based.

**{¶ 62}** In the instant case, the complaint alleged that D.A. was neglected, and alleged as a factual basis that Mother lacked appropriate judgment with which to care for the children and that Mother allowed M.A. to return to the home after allegations of sexual abuse.[3] There were sufficient facts to support an allegation of neglect under R.C. 2151.03(A)(2), which defines a neglected child as one "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian."

**{¶ 63}** Because the complaint effectively pleaded neglect of D.A., it was sufficient to establish the jurisdiction of the juvenile court over her. *In re Poling*, 64

---

[3] We acknowledge that Mother initially removed M.A. from the home on hearing of the allegations, and only allowed him to return after consulting with the agency, however, the question here is whether the complaint effectively pleaded neglect.

Ohio St.3d 211, 213, 1992-Ohio-144, 594 N.E.2d 589; R.C. 2151.23(A)(1) ("The juvenile court has exclusive original jurisdiction under the Revised Code * * * [c]oncerning any child who on or about the date specified in the complaint * * * is alleged * * * a delinquent, unruly, abused, neglected, or dependent child.").

{¶ 64} After hearing the evidence, the trial court sua sponte amended the complaint to include an allegation that D.A. was dependent pursuant to R.C. 2151.04(C) or (D). Juv.R. 22(B) permits such an amendment by agreement of the parties or by the court, "if the interests of justice require." Juv.R. 22(B), *In re T.W.*, 12th Dist. Warren No. CA2014-07-100, 2014-Ohio-5753, ¶ 18. Therefore, because the juvenile court amended the complaint, it was permitted to find D.A. to be a dependent child.

{¶ 65} Because the juvenile court had jurisdiction over D.A., there was no error, therefore, we overrule the fourth assignment of error.

{¶ 66} Finally, in the second assignment of error, Mother argues that it was error for the court not to dismiss the complaint and error to find it was in the best interest of the children to be placed in the temporary custody of CCDCFS.

{¶ 67} The standard of review for a juvenile court's award of temporary custody is abuse of discretion. *In re A.S.*, 8th Dist. Cuyahoga No. 105651, 2018-Ohio-1085, ¶ 17, citing *In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 13. Abuse of discretion occurs when a trial court acts unreasonably, arbitrarily, or unconscionably. *Mayer v. Mayer*, 8th Dist. Cuyahoga No. 109103, 2020-Ohio-4993, ¶ 8, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140

(1983). "The trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion." *Id.*, quoting *Blakemore* at 218-219.

{¶ 68} Initially, we note, "[a]n award of temporary custody to a public or private children's services agency is substantially different from an award of permanent custody, where parental rights are terminated." *In re Ka.C.*, 8th Dist. Cuyahoga Nos. 102000, 102002, 102005, and 102006, 2015-Ohio-1158, ¶ 20. Here, "the parent only loses temporary custody of a child and retains residual parental rights, privileges, and responsibilities." *Id.*, citing *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c). Furthermore, the parents may regain custody; it is not permanently foreclosed. *Id.*, citing *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12. "For this reason, the juvenile court employs the less restrictive 'preponderance of the evidence' standard in temporary custody cases as opposed to the 'clear and convincing' standard of evidence employed in permanent custody cases." *Id.* at *id.* at ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). "Preponderance of the evidence" means "evidence that's more probable, more persuasive, or of greater probative value." *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, citing *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52, quoting *State v. Finkes,* 10th Dist. Franklin No. 01AP-310, 2002-Ohio-1439.

{¶ 69} "A trial court has substantial discretion in weighing the considerations involved in making the determination regarding a child's best

interest." *In re S.M.,* 2d Dist. Montgomery No. 24539, 2011-Ohio-6710, ¶ 4, citing *In re K.H.,* Clark App. No. 2009-CA-80, 2010-Ohio-1609, ¶ 66.

{¶ 70} In the instant case, Mother argues that the decision to place the children in the temporary custody of CCDCFS was not supported by the evidence in part because the abuse allegations are not supported by the evidence. We disagree. In the first assignment of error, we concluded that the juvenile court's finding of abuse was supported by competent, credible evidence.

{¶ 71} In addition to that finding, we find that Mother has consistently blocked the agency from having meaningful conversations with the children. The family has not engaged in counseling or taken steps to allow further investigations of the sexual abuse allegations.

{¶ 72} Further, the GAL noted that he did not believe Mother would do what was necessary to protect E.E. From initially believing that Mother was less than prudent but capable, the GAL became convinced that Mother was purposefully silencing E.E. Finally, Mother failed to consistently maintain counseling for E.E.

{¶ 73} Based on the foregoing, the juvenile court had sufficient evidence to determine by a preponderance of the evidence that temporary custody to CCDCFS was in the best interest of the children.

{¶ 74} Accordingly, we overrule the second assignment of error.

{¶ 75} Judgment affirmed in part, reversed in part, and remanded.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR